STATE of Missouri, Respondent,

v.

Kenneth James BEVINEAU, Appellant.

No. 55197.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1970.

**684**

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Thomas H. Moore, St. Louis, for appellant.

WELBORN, Commissioner.

Appeal from judgment and sentence of life imprisonment for assault with intent to kill with malice aforethought. Jury found Kenneth James Bevineau guilty of offense, but were unable to agree on punishment which was assessed by court.

On December 20, 1968, at about 3:00 P. M., appellant and Joe Williams entered the Missouri-Hickory Market in St. Louis. Appellant and Williams first went to the rear of the store near the meat counter. Williams went back to the cashier and pulled a pistol and announced a holdup. Appellant pulled a pistol and pointed it at the butcher. The cashier pushed an alarm button and Patrolman Raymond Reynolds of the St. Louis Police Department went to the store. When he saw Williams attempting to conceal a gun, the officer said, "Don't move, you are under arrest, drop it."

A struggle ensued between Williams and the officer. Appellant, observing this, went toward the front of the market and fired his gun, striking the officer. Appellant left the market. Eventually the officer shot and killed Williams outside the market.

Approximately two blocks from the market, appellant was seen with a pistol in his hand, trying to stop an automobile. Appellant went to the parking lot of the Western Textile Products Company and there tried to force George Fallart, an employee of Western, to drive him from the area. When Fallart refused, appellant pointed his pistol at Fallart and fired one shot. Fallart refused to assist appellant who fled on foot.

Appellant was arrested a short time later. When arrested he had a pistol with

three live cartridges, one spent cartridge and one empty chamber.

Upon his arrest, appellant was returned by police officers to the market where he was identified by employees and customers.

Charged with assault with intent to kill, with malice aforethought, by reason of the shooting of Officer Reynolds, appellant was found guilty by a jury.

On this appeal, appellant's first contention is that the trial court erred in declining to conduct a hearing, on his motion, to determine whether or not, under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178, pre-trial confrontations between witnesses were so suggestive and improper as to taint the anticipated in-court identification of appellant by these witnesses. The trial court refused to conduct a hearing, apparently on the grounds that the confrontations occurred at the scene of the crime.

Appellant's brief is far from specific on this point. He states that the defendant was viewed alone in police custody by every witness who identified him at the trial. The only witness specifically referred to is witness Laurenti who observed defendant in the course of his flight. Our examination of the record shows that two witnesses, Wolff, the owner of the store, and LaRue, the cashier, identified appellant at the trial and also testified that they saw appellant when he was returned to the store in police custody after his arrest. Mrs. LaRue testified that the confrontation at the store occurred some fifteen to twenty minutes after the defendant had left the store.

■ The circumstances of the on-the-scene confrontation between defendant and Wolff and LaRue are sufficient to bring this case within the rule applied in State v. Hamblin, Mo.Sup., 448 S.W.2d 603. That case held that Wade and Gilbert do not preclude in-court identification by an eye-witness who viewed the defendant in police custody shortly after the offense under circumstances which demonstrate that the confrontation was designed to permit the police to ascertain whether they had apprehended the person who had committed the crime under investigation. In State v. Hamblin, supra, the court held that the failure of the trial court to conduct a pre-trial hearing on the identification issue was not error in such circumstances. That ruling is here applicable and controlling.

As for the witness Laurenti, he was a member of a Laclede Gas Company crew that was working on Hickory Street at the time of the crime. He testified that he saw a man on Hickory Street who waved a gun at the driver of a station wagon which did not stop. The man then walked by the trailer in which the Laclede crew had its tools and waved his gun at the workmen and told them to move. He testified that the man went between two houses as a police patrol car appeared. The witness testified that he saw the man alone that night at the police station and again the next day at a line-up. He testified that he learned that the man's name was Kenneth Bevineau.

The trial court overruled defendant's objection to the witness's identification testimony on the grounds that he made no in-court identification of the witness. On this appeal the state concedes that the total effect of the witness's testimony was the same as if he had made an in-court identification and the state does not attempt to support the trial court's ruling on that basis. The state does contend that any error in the admission of the witness's identification testimony was harmless under Harrington v. California, 395 U.S. 250, 89 S. Ct. 1726, 23 L.Ed.2d 284.

■ There was overwhelming untainted evidence of defendant's guilt of the offense. He was identified by eyewitnesses. He admitted his participation in a statement to police, introduced as a part of the state's case. Finally, defendant himself testified in his own defense to the encounter between himself and Officer Reynolds.

This is the basis of the charge against appellant. In such circumstances, witness Laurenti's identification, significant only because it placed appellant in the vicinity of the crime, is so clearly cumulative only that its admission was harmless error under Harrington.

Appellant charges that the testimony of the witness Fallart related to a separate offense, an assault on that witness, and that it was therefore erroneously admitted. Fallart testified to the defendant's efforts to force him to drive defendant from the vicinity of the crime. He testified that defendant struck him in the nose with the butt of his gun and that he fired the gun once. Fallart testified that in the course of the defendant's efforts to convince him that he should drive defendant away, defendant told him that he "had just shot a man and one more wouldn't make any difference to him."

"The general rule is that proof of the commission of separate and distinct crimes by the defendant is not admissible, unless the proof has a legitimate tendency to establish defendant's guilt of the charge for which he is on trial. If evidence of other crimes reasonably tends to prove a material fact in issue, it should not be rejected because it incidentally proves defendant guilty of other crimes. State v. Holbert, Mo., 416 S.W.2d 129, 132[2–6]." State v. Kilgore, Mo.Sup., 447 S.W.2d 544, 547[3].

■ In this case, Fallart's testimony did have a legitimate tendency to connect appellant with the assault upon Officer Reynolds. His admission was clearly relevant and his conduct in endeavoring to get out of the vicinity evidences a consciousness of guilt and was admissible although it incidentally involved the commission of another offense. State v. Kilgore, supra.

In State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, cited by appellant, evidence of a prior assault was held admissible in a manslaughter case because of its tendency to negative accident or mistake. The case

is not controlling here. In State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, also cited by appellant, the state attempted to justify presentation, in a murder case, of evidence of a robbery, two hours after the murder, on the grounds of identity. The court held, in effect, that such evidence had no relevancy to the offense charged. Here there was a relevant connection of the assault on Fallart with the shooting of Officer Reynolds and Reese is not applicable.

■ Appellant next contends that Fallart's in-court identification should not have been permitted because it was tainted by a one-man confrontation at the police station on the date of the offense. The court, on appellant's motion, did conduct an out-of-the-presence-of-the-jury hearing on the circumstances of Fallart's pre-trial confrontation. It developed that Fallart had accompanied an officer to police headquarters at around 5:00 P.M. on the date of the offense. While there, Fallart saw defendant as he was being taken by police officers from a room. Defendant passed about ten feet from the witness who was not asked to identify him at that time. He did identify defendant the next morning at a four-man line-up. In any event, Fallart testified that he was seated in the automobile next to the defendant. He had more than adequate opportunity to observe the defendant during the ten-minute daytime confrontation on the parking lot where the witness had cooly refused to accede to the defendant's demands. The witness testified that the police officers made no suggestion to him that Bevineau was the man in his auto. The circumstances here demonstrate a wholly independent basis for Fallart's in-court identification and no error resulted from its admission. State v. Williams, Mo.Sup., 448 S.W.2d 865, 868[4, 5]; State v. DeLuca, Mo.Sup., 448 S.W.2d 869.

Appellant's next assignment of error relates to testimony by a police officer to a statement made by appellant following his arrest. In the statement, appellant stated that he had gone with Williams to the

store to commit a robbery. He stated that he went to the rear of the store where he pulled his pistol and told the "dudes" standing there, "You know what this is." Bevineau told the officer that he saw a policeman enter and struggle with Williams; that he approached the two with his gun and that he then heard a shot and ran out the door. Bevineau said that he hid for a while and then came out and tried to force a white man in a car to drive him away, telling him that he was going to blow his brains out. Bevineau said that his gun fired twice accidentally while he was still in the car. He said that he got out of the car, climbed a fence and went through a gangway to Park Avenue where he was arrested.

■ Appellant says that this statement did not amount to a confession or admission against interest. It certainly was the latter because it placed appellant at the scene of the offense and an inference of guilt, in connection with the evidence offered, could be drawn from it against appellant. 22A C.J.S. Criminal Law § 730, p. 1024. Appellant is in no position to object on the grounds that the statement is self-serving. Self-serving statements may not be offered by the defendant in his own behalf. 22A C.J.S. Criminal Law § 737, p. 1087. Any offer of such statements for the state would be favorable to the accused and he has no right to complain.

■ Appellant further objects that the portion of the statement relating to the assault on Fallart involved other offenses. However, for the same reason that Fallart's testimony was admissible over this objection, the admission of the statement, insofar as it related to those matters, was likewise not error. State v. Brown, 253 Iowa 658, 113 N.W.2d 286, 291–293[7]–[11].

Appellant's final contention is that, on the basis of his testimony that he tried to "daze" the officer by striking him with his gun which accidentally discharged and that he didn't intend to kill the officer, he was entitled to an instruction on intent to kill without malice, or assault to do great bodily harm without malice, or common assault.

Appellant's testimony was that he heard someone say "Drop that gun." He looked toward the front of the store and saw Williams and a police officer scuffling. He ran toward the front of the store and swung down on the officer, trying to hit him in the head. "I heard a shot, but I ran on out—out of the store.

"Q. Was the shot from your gun?

"A. I guess it was.

"Q. How many shots were fired at that time?

"A. By me?

"Q. Yes.

"A. One."

Defendant further stated that he was trying to daze the officer to get out of the store and was not trying to kill him.

■ The testimony of defendant also showed that he had cocked his loaded weapon and had his finger on the trigger. Defendant did not testify that he struck the officer with the gun, merely that when he tried to hit the officer he fired the gun. This testimony must be viewed in the light of the entire circumstances. Defendant was participating in an armed robbery, a capital offense. When he heard the policeman order "Drop that gun," he ran toward the policeman, with his finger on the trigger of the cocked and loaded weapon. Even though he does not say that he deliberately pulled the trigger, he did say that he fired the weapon once. His use of the weapon in the manner in which he testified clearly shows an assault upon the officer with a deadly weapon. There was no possible lawful excuse for the attack and the unlawful attack was clearly determined upon before it was executed. Defendant's testimony does not eliminate any of these elements of the offense under § 559.180,

V.A.M.S., under which he was charged. The only question, therefore, is whether or not defendant was entitled to submission of lesser offense under § 559.190 and § 559.-220, V.A.M.S., because he testified that he did not intend to kill the officer.

 Our cases hold that in criminal cases involving personal violence, where intention, motive and reason of the defendant are essential elements of the crime, the defendant may testify directly thereto. State v. Chamineak, Mo.Sup., 343 S.W.2d 153, 160–161[12]; State v. Fletcher, Mo. Sup., 190 S.W. 317, 321; State v. Palmer, 88 Mo. 568, 572. However, denial of intention to kill does not necessarily require an instruction for a lesser degree of the offense charged when "the statements of defendant were so incumbered with the physical facts and conduct of defendant, so unreasonable and inconsistent with the experience of mankind * * *." State v. Nelson, 118 Mo. 124, 23 S.W. 1088. See State v. Musick, 101 Mo. 260, 14 S.W. 212, 214–215; State v. Turlington, 102 Mo. 642, 15 S.W. 141, 146.

 Here the defendant used a cocked, loaded pistol. He acknowledges that his intent was to use it on the head of the officer. He acknowledges that he fired it. He in no way explains how the pistol fired. In such circumstances, any protestation that he had no intention to kill the officer is so contrary to his actions that no instruction on a lesser offense was required. See State v. Johnson, 326 Mo. 1030, 33 S.W.2d 912.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.