FILED IN
COURT OF CRIMINAL APPEALS

August 18, 2015

ABEL ACOSTA, CLERK

PD-0372-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/17/2015 10:05:32 PM
Accepted 8/18/2015 8:09:55 AM
ABEL ACOSTA
CLERK

NO. PD-0372-15

IN THE

# COURT OF CRIMINAL APPEALS

OF TEXAS
AUSTIN, TEXAS

## LUIS SANCHEZ

APPELLANT,

V.

## STATE OF TEXAS

APPELLEE

# *APPELLANT'S BRIEF ON PETITION FOR DISCRETIONARY REVIEW*

On review from the
ELEVENTH COURT OF APPEALS , EASTLAND, TEXAS
CASE NO.  11-13-00099-CR

M. Michele Greene
State Bar No.00789966
2833 Wildwood Ave.
Odessa, Texas 79761
Tel: (432) 238-1255
Email: mmg@michelegreenelaw.com

**Attorney for Appellant**

**ORAL ARGUMENT WAS NOT GRANTED**

NO. PD-0372-15

IN THE

# COURT OF CRIMINAL APPEALS

OF TEXAS
AUSTIN, TEXAS

# GARY JAY MCCOY
APPELLANT,

V.

# STATE OF TEXAS
APPELLEE

# *APPELLANT'S BRIEF ON PETITION FOR DISCRETIONARY REVIEW*

On review from the
ELEVENTH COURT OF APPEALS , EASTLAND, TEXAS
CASE NO.  11-13-000099-CR

**TO THE HONORABLE JUSTICES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:**

NOW COMES Luis Sanchez, Appellant in this cause, by and through his court-appointed appellate counsel, M. Michele Greene, and files this brief on petition for discretionary review.

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names, addresses, and emails (if known), of all counsel.

**Defendant/Appellant:**                           Luis Sanchez

**Complainant/Appellee/:**                        State of Texas

**Appellant's Counsel:**
**  at Trial:**                                              William R. Bowden, Jr.
                                                              221 W. 4th Street
                                                              Odessa, Texas 79761

**Appellant's Counsel**
**  on Appeal:**                                         M. Michele Greene
                                                              2833 Wildwood Ave.
                                                              Odessa, Texas 79761
                                                              mmg@michelegreenelaw.com

**Appellee's Counsel**
**  at Trial:[1]**                                         Dusty Gallivan
                                                              Deputy District Attorney
                                                              300 N. Grant Ave., Rm. 305
                                                              Odessa, Texas 79761

**Appellee's Counsel**
**  on Appeal:**                                         Michael Bloch
                                                              Assistant District Attorney
                                                              300 N. Grant Ave. Rm. 305
                                                              Odessa, Texas 79761
                                                              MICHAEL.BLOCH@ectorcountytx.gov.

---

[1]The Reporter' s Record reflects that a "Mr. Conner" was asking questions and making objections on behalf of the State during the bench trial; however, this individual is not otherwise specifically identified in any volume of the Reporter's Record.  (RR 4:79-83,91).

**Trial Court:** The Honorable John W. Smith, 161ST District Court, Ector County, Texas

**Appellate Court:** Justices Jim R. Wright, Mike Wilson, and John M. Bailey, Court of Appeals, Eleventh District of Texas.

# RECORD REFERENCES

The Clerk's Record contains only one volume; therefore, references in this brief to the Clerk's Record are by volume and page number, indicated as "CR 1:__." The Clerk's Record contains the pleadings, orders, and correspondence filed with (or sent to) the trial court and clerk that are pertinent to this appeal.

This appeal also includes two Supplemental Clerk's Records. Each Supplemental Clerk's Record contains only one volume. References to the Supplemental Clerk's Record dated December 11, 2012, in this brief are by volume and page number, indicated as "SCR 1:__." References to the Supplemental Clerk's Record dated August 19, 2013, in this brief are also by volume and page number, indicated as "2SCR 1:__."

The Reporter's Record contains six volumes; therefore, references to the Reporter's Record in this brief are by volume and page number, indicated as "RR __:__." The Reporter's Record includes the transcripts of the arraignment hearing held on April 5, 2010,[2] and the pretrial hearing held on June 8, 2011. The Reporter's Record also includes transcripts of the bench trial held on September 6, 2012, and the post-judgment hearing held on October 2, 2012.

---

[2]Volume 2 of the Reporter's Record reflects that the arraignment hearing in this cause was held on September 6, 2012; however, this date reflects a typographical error, as the arraignment hearing was actually held on April 5, 2010. (SCR 1:15).

This appeal also includes a Supplemental Reporter's Record. Such Supplemental Reporter's Record contains only one volume; therefore, references in this brief to the Supplemental Reporter's Record are by volume and page number, indicated as "SRR 1:__." The Supplemental Reporter's Record includes the mental competency hearing held on December 10, 2012.

Furthermore, the Reporter's Record includes all of the parties' exhibits submitted to the trial court and admitted into evidence during the bench trial. All such exhibits are contained in Volumes 4 and 5 of the Reporter's Record. References to the parties' exhibits are indicated as "RR __:SX#__" or "RR __:DX#__."

## PARTY REFERENCES

Appellant Luis Sanchez shall be referred to as "Sanchez." The State of Texas, Appellee, shall be referred to as "the State." The Eleventh Court of Appeals shall be referred to as "the Appellate Court."

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

RECORD REFERENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PARTY REFERENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . x

ISSUES FOR WHICH REVIEW WAS GRANTED . . . . . . . . . . . . . . . . . . . . xi

STATEMENT OF FACTS RELATIVE TO GRANTED ISSUES . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

●     Third-Degree Felony: Assault Family Violence . . . . . . . . . . . . . . . . 4
●     Distinct Classes of Individuals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
●     Membership in multiple Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
●     The State's Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
●     The Trial Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
●     The Fatal Variance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
●     The Majority Justices' Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
●     Inapplicable Case Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
●     The Dissenting Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
●     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# INDEX OF AUTHORITIES

**CASES**

*Cada v. State*, 334 S.W.3d 766 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . 7,10

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . 10

*Hill v. State*, No. 01-10-00926-CR, 2012 TEX. APP. LEXIS 2225
　　　(Tex. App.–Houston [1st Dist.], March 22, 2012, no pet.)
　　　(mem. op.) (not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . 12

*Johnson v. State*, 409 S.W.3d 738 (Tex. App.–Houston [1st Dist.] 2013,
　　　no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sanchez v. State*, 460 S.W.3d 675 (Tex. App.–Eastland,
　　　March 5, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x,2,11,13-15

*White v. State*, No. 05-09-00112-CR, 2010 TEX. APP. LEXIS 5985
　　　(Tex. App. Dallas, July 29, 2010, pet ref'd) (mem. op.)
　　　(not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES**

TEX. FAM. CODE ANN. § 2.001 *et seq*. (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . 14

TEX. FAM. CODE ANN. § 71.0021(a) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. FAM. CODE ANN. § 71.0021(b) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. FAM. CODE ANN. §§ 71.0021(b)(1-3) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . 5

TEX. FAM. CODE ANN. § 71.003 (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8

TEX. FAM. CODE ANN. § 71.005 (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 6,9

TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, and 71.005 (LEXIS 2015) . . . . . . . 5

TEX. GOV'T CODE ANN. § 311.021(3) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. GOV'T CODE ANN. § 573.024(a)(1) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . 6

TEX. PEN. CODE ANN. § 22.01(a)(1) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. PEN. CODE ANN. § 22.01(b) (LEXIS 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. PEN. CODE ANN. §§ 22.01(b)(2), 22.01(b)(2)(B) (LEXIS 2015) . . . . . . . . . . 5

## STATEMENT OF THE CASE

Sanchez was indicted for assault family violence–a third degree felony–pursuant to TEX. PEN. CODE ANN. §§ 22.01(a)(1), (b)(2)(B) and TEX. FAM. CODE § 71.0021(b). Sanchez pleaded not guilty to this charge. (RR 4:7-8). A bench trial was held on September 6, 2012. (RR 4:1). At the conclusion of the bench trial, the trial court found Sanchez guilty of the indicted charge. (CR 1:57-58; RR 4:138). The trial court sentenced Sanchez to six years imprisonment in the Institutional division of the Texas Department of Criminal justice pursuant to TEX. PEN. CODE § 12.14. (CR 1:57-58; RR 5:10). Sanchez timely filed his notice of appeal. (CR 1:59).

## STATEMENT OF THE PROCEDURAL HISTORY

In a published opinion, the majority of the Appellate Court affirmed Sanchez' conviction. *Sanchez v. State*, 460 S.W.3d 675, 681 (Tex. App.–Eastland, March 5, 2015). Chief Justice Jim. R. Wright entered a dissenting and concurring opinion. *Id*. Sanchez did not file a Motion for Rehearing with the Appellate Court. Rather, Sanchez filed a petition for discretionary review with this Court on April 21, 2015. On or about July 1, 2015, the Court granted his petition for discretionary review.

# ISSUES FOR WHICH REVIEW WAS GRANTED

**<u>Issue No. 1</u>**:

> A resolution is necessary of the disagreement amongst the justices of the Appellate court as to whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under TEX. PEN. CODE ANN. § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

**<u>Issue No. 2</u>**:

> An n important question of state law is presented that has not been, but should be, settled by this Court as to whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under TEX. PEN. CODE ANN. § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

# STATEMENT OF FACTS RELATIVE TO GRANTED ISSUES

During the bench trial, Rachael Sanchez a/k/a Rachael Price, ("Price"), alleged that on December 18, 2009, Sanchez physically assaulted her. (RR 4:21-24). Price also testified that on the date of the alleged assault, she and Sanchez were involved in a dating relationship. (RR 4:18-19). Specifically, Price testified on direct examination that she and Sanchez were in a dating relationship for two and a half years. (RR 4:18-19). She testified their dating relationship began in June of 2006 and ended in December of 2009. (RR 4:19).

On cross-examination, however, Price admitted that she was not simply in a dating relationship with Sanchez during that time period, but that she had actually entered into a common law marriage with him. (RR 4:47). Price immediately recanted her testimony and asserted that she never considered herself married to Sanchez, even though Price acknowledged she had lived with Sanchez and they had filed joint tax returns together. (RR 4:48-49).

Price also denied that she had ever filed a divorce petition alleging she was married to Sanchez. (RR 4:49). When confronted with an Original Petition for Divorce she had filed on June 22, 2010, Price finally admitted she had filed a divorce proceeding seeking a divorce from Sanchez and alleging she had entered into a common law marriage with Sanchez in August of 2006. (RR 4:50-51). A copy of

1

this divorce petition was introduced into evidence during the bench trial. (RR 4:DX#1). Price further admitted she had been judicially awarded a divorce from Sanchez a few months after filing the divorce petition. (RR 4:47,51).

Although she had just testified that she had not only filed for divorce from Sanchez, but had actually been awarded a divorce from Sanchez, Price continued to assert on re-direct examination that she did not consider herself married to Sanchez prior to filing for a divorce from him. (RR 4:67). In direct contrast to her testimony, Price's father testified at the bench trial there was no question that Price had entered into a common law marriage with Sanchez in August of 2006 and that Price had gotten a divorce from Sanchez after the alleged assault had occurred. (RR 4:115-16,123).

Based on 1) Price's own admissions at trial, 2) her father's unequivocal testimony, and 3) the introduction into evidence of the file-stamped copy of Price's June 22, 2010 Original Petition for Divorce, the evidence at trial conclusively established Price and Sanchez were actually married on the date the assault allegedly occurred—i.e. December 18, 2009. In this regard, all three justices of the Appellate Court agreed the evidence introduced at trial conclusively established that Price and Sanchez were actually married on December 18, 2009. *Sanchez*, 460 S.W.3d at 677, 684. Thus, the question before this court is not whether Sanchez and Price were

actually married. Rather, the dispute to be settled by this Court revolves around the specific language included in the indictment upon which Sanchez's third-degree felony, family-violence assault conviction was based.

## SUMMARY OF THE ARGUMENT

The State failed to plead alternative elements under TEX. PEN. CODE § 22.01(b)(2) in this case. As a result, the State limited its case against Sanchez to proving he and Price were involved in a "dating relationship" as defined in TEX. FAM. CODE § 71.0021(b). At trial, the evidence conclusively established Sanchez and Price were actually married and not simply dating when the assault occurred.

The majority justices mistakenly concluded that because Sanchez and Price had dated approximately three and a half years prior to the assault and before they got married, the State met its burden of proof under § 71.0021(b). A marriage relationship under the TEXAS FAMILY CODE is separate and distinct from a dating relationship. A marriage relationship is therefore not subsumed in the definition of a dating relationship found in § 71.0021(b).

The majority justices' conclusion to the contrary was therefore erroneous. Because there was a fatal variance between the indictment and the State's proof in this case, Sanchez's conviction of the third-degree felony offense of assault family violence should not be affirmed on appeal.

3

# ARGUMENT

**Issues for Review Restated:**

**Issue No. 1**:            A resolution is necessary of the disagreement amongst the justices of the Appellate court as to whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under TEX. PEN. CODE ANN. § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).

**Issue No. 2**:            An n important question of state law is presented that has not been, but should be, settled by this Court as to whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under TEX. PEN. CODE ANN. § 22.01(b)(2) and TEX. FAM. CODE § 71.0021(b).[3]

●    <u>Third-Degree Felony: Assault Family Violence</u>.

A person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. **TEX. PEN. CODE ANN. § 22.01(a)(1)** (LEXIS 2015). Such offense is generally a Class A misdemeanor. **TEX. PEN. CODE ANN. § 22.01(b)** (LEXIS 2015).

However, the offense is elevated to a third degree felony when the assault (1) is committed against a person who falls within one of the classes of individuals defined in TEX. FAM. CODE § 71.0021(b) (dating relationship), TEX. FAM. CODE §

---

[3]As both issues involve the same facts, case law, and statutory statutory authority, they will be addressed together.

4

71.003 (family) and TEX. FAM. CODE § 71.005 (household); and (2) is committed by strangulation or suffocation. **TEX. PEN. CODE ANN. §§ 22.01(b)(2)**, **22.01(b)(2)(B)** (LEXIS 2015); **TEX. FAM. CODE ANN. §§ 71.0021(b)**, **71.003**, and **71.005** (LEXIS 2015).

● Distinct Classes of Individuals.

The TEXAS FAMILY CODE clearly defines these separate and distinct classes of individuals. For example, § 71.0021(b) of the TEXAS FAMILY CODE defines a "dating relationship" as a "relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." **TEX. FAM. CODE ANN. § 71.0021(b)** (LEXIS 2015). Factors to consider in determining the existence of a dating relationship are:

(1)    the length of the relationship;
(2)    the nature of the relationship; and
(3)    the frequency and type of interaction between the persons involved in the relationship.

**TEX. FAM. CODE ANN. §§ 71.0021(b)(1-3)** (LEXIS 2015).

Section 71.003 of the TEXAS FAMILY CODE defines "family" to include the following:

(1)    individuals related by consanguinity or affinity;
(2)    individuals who are former spouses of each other;
(3)    individuals who are the parents of the same child without regard to marriage; and

5

(4)    foster children and foster parents, without regard to whether those individuals reside together.

**TEX. FAM. CODE ANN. § 71.003** (LEXIS 2015).

Two individuals are related to each other by "affinity" if they are "married to each other." **TEX. GOV'T CODE ANN. § 573.024(a)(1)** (LEXIS 2015). Accordingly, a person's spouse is statutorily included in the definition of "family" under § 71.003. In contrast, the term "family" as defined in § 71.003 does not necessarily include an individual with whom the actor is in a "dating relationship." *Johnson v. State*, 409 S.W.3d 738, 742 (Tex. App.–Houston [1st Dist.] 2013, no pet.).

Section 71.005 of the TEXAS FAMILY CODE defines "household" as "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." **TEX. FAM. CODE ANN. § 71.005** (LEXIS 2015).

● Membership in Multiple Classes.

Conceivably, a victim of an assault might be a member of more than one of the classes described in § 22.01(b)(2). For example, an assault victim who is a defendant's spouse would be (1) related to the defendant by affinity (§ 71.003-family); and could possibly be (2) the parent of the defendant's child (§ 71.003-family); and/or (3) living in the defendant's household (§ 71.005–household).

6

On the other hand, an assault victim who is a defendant's girlfriend would be (1) an individual having a dating relationship with the defendant (§ 71.0021(b)-dating relationship); and could possibly be (2) the parent of the defendant's child (§ 71.003-family); and/or (3) living in the defendant's household (§ 71.005–household).

When there is overlap or uncertainty concerning the membership of an individual in a particular class, the State may plead alternatives in the indictment. *Cada v. State*, 334 S.W.3d 766, 772 (Tex. Crim. App. 2011) (where overlap or uncertainty concerning status or service of particular person within protected general class, State may plead alternatives in indictment).

If, however, the State elects to plead only one specific element from a penal offense that contains alternatives for that element, the sufficiency of the evidence is measured by the element that was actually pleaded and not by any other statutory alternative element. *Id*. at 774. For example, if the State alleges in an indictment that the victim of an assault belongs to only one particular class, the State is limited at trial to proving the victim was a member of that particular class. Accordingly, a defendant's third-degree felony conviction for assault family violence cannot be upheld by evidence that the victim was a member of a different class of individuals.

●    The State's Indictment.

The indictment in the case at bar was filed on March 22, 2010, (the "Indictment"), and included the following language:

> . . . **LUIS SANCHEZ**, hereafter styled the Defendant, heretofore on or about the 18th day of December, 2009, did then and there intentionally, knowingly, or recklessly cause bodily injury to Rachel Price, a person with whom the Defendant has or has had a dating relationship, as described by Section 71.0021(b), Family code, by intentionally, knowingly or recklessly impeding the normal breathing or circulation of the blood of the said Rachel Price by applying pressure to the throat or neck of the said Rachel Price . . .

(CR 1:5). Undisputedly, the State alleged in the Indictment that Price was a member of only one class described in § 22.01(b)(2)---a victim involved in a dating relationship with the defendant as defined in § 71.0021(b). (*Id*.).

●    The Trial Evidence.

The evidence at trial established Price was a member of several different classes under § 22.01(b)(2). For example, as Sanchez's spouse, she was related to him by affinity and was thus a member of his family under § 71.003. *See* **TEX. FAM. CODE ANN. § 71.003** (LEXIS 2015).

Additionally, Price testified she and Sanchez had a daughter during their marriage. (RR 4:20). Consequently, Price was also member of Sanchez's family under § 71.003 because they were the parents of the same child. *Id*.

8

Finally, Price testified that she was living with Sanchez on the date the alleged assault occurred. (RR 4:47,51). As such, Price was a member of Sanchez's household under § 71.005. *See* **TEX. FAM. CODE ANN. § 71.005** (LEXIS 2015).

Yet, the State failed to plead any alternatives under § 71.003 or § 71.005 in the Indictment. The State also never amended the Indictment to include any alternative classes of individuals under § 71.003 or § 71.005. As a result, the State proceeded to trial based solely on the single allegation that Sanchez and Price were involved in a "dating relationship." (RR 4:7). Because of the failure to plead any alternatives in the Indictment, the State limited its case against Sanchez to proving he had committed an assault against Price, a person with whom he "has or had" a "dating relationship."

● <u>The Fatal Variance</u>.

The State failed to meet its burden of proof in this regard. Instead of proving a continuing or past dating relationship between Price and Sanchez, the State actually proved at trial that Price was Sanchez's spouse---not a girlfriend–who was living with him at the time the assault occurred. The State, therefore, proved Price was a member of Sanchez's family and Sanchez's household, but the State did not prove Price and Sanchez were involved in a "dating relationship." Accordingly, there was a fatal variance between the Indictment and the State's evidence at trial.

9

A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id*. A variance claim is treated as an insufficiency of the evidence issue on appeal. *Id*. at 247. A fatal variance renders a conviction void, and the only remedy is to render an acquittal. *Cada*, 334 S.W.3d at 776 (reversing judgment of court of appeals and rendering acquittal where there was material variance between indictment and proof adduced at trial).

In this case, the State failed to prove Price was a member of the class alleged in the Indictment---that Price was an individual involved in a "dating relationship" with Sanchez. This element was a distinct statutory element of the third-degree felony offense for which Sanchez was being prosecuted. Consequently, the State was required to prove the statutory element it had chosen to allege, and not one of the other alternative statutory elements it had failed to allege. *See Id*. As a result of the State's lack of evidence as to this element, a fatal variance occurred. Sanchez was therefore entitled to an acquittal as to the third-degree felony charge of assault family violence.

● The Majority Justices' Error.

The majority of the Appellate Court, however, held otherwise. Rather than acknowledging this fatal variance, the majority justices conducted a strained reading of § 71.0021(b) that ran counter to 1) the express statutory language, 2) the Texas Legislature's purpose in enacting the current version of § 22.01, and 3) common sense.

Focusing on the words "have had," as included in § 71.0021(b), the majority justices concluded that because Sanchez and Price "had a dating relationship in the past, such a relationship falls within the provisions of the statute that increase this assault to a third-degree felony." **Sanchez**, 460 S.W.3d at 680. To reach this conclusion, the majority justices simply disregarded the different classes of assault victims as defined by § 71.0021(b), § 71.003, and § 71.005.

Likewise, to sustain Sanchez's third-degree felony conviction, the majority justices read § 71.0021(b) in a vacuum and ignored the statutory language found in § 71.0021(a) which specifically distinguishes "a dating relationship" from a "marriage." *See* **TEX. FAM. CODE ANN. § 71.0021(a)** (LEXIS 2015).

● Inapplicable Case Law.

Finally, to support their ruling, the majority justices relied upon unpublished memorandum opinions from sister appellate courts. Specifically, the majority

11

justices relied upon ***White v. State***, No. 05-09-00112-CR, 2010 TEX. APP. LEXIS 5985 (Tex. App. Dallas, July 29, 2010, pet ref'd) (mem. op.) (not designated for publication); and ***Hill v. State***, No. 01-10-00926-CR, 2012 TEX. APP. LEXIS 2225 (Tex. App.–Houston [1ˢᵗ Dist.], March 22, 2012, no pet.) (mem. op.) (not designated for publication).

Neither *White* nor *Hill* involved defendants who were married to the victims at the time of the assaults. In fact, the assault victims in *White* and *Hill* were never married to the defendants at any point in time. Likewise, neither *White* nor *Hill* involved the issue of a fatal variance. Rather, both *White* and *Hill* involved questions as to whether the defendants had been romantically involved with the assault victims during the thirty to sixty days prior to the assaults. ***White***, 2010 TEX. APP. LEXIS 5985, at *1; ***Hill***, 2012 TEX. APP. LEXIS 2225, at *5.

Neither *White* nor *Hill* held that a defendant could be convicted of a third-degree felony for assaulting his spouse based on their past dating relationship under § 22.01(b)(2) and § 71.0021(b). More importantly, there appears to be no Texas case law----notwithstanding the case at bar-----in which an appellate court has held that a defendant can be convicted of assaulting his spouse–or for that matter his former spouse—under § 22.01(b)(2) and § 71.0021(b).

12

● <u>The Dissenting Opinion</u>.

Recognizing the deficiencies in the majority justices' analysis, as well as the lack of case law to support their decision, Chief Justice Jim "R" Wright entered a well-reasoned dissenting and concurring opinion in this case. *Sanchez*, 460 S.W.3d at 681-85. Chief Justice Wright determined that based on the language included in § 71.0021, the Texas Legislature intended "marriage" and a "dating relationship" to be two separate and distinguishable relationships. *Id*. at 682. He further concluded that based on the specific language of § 71.0021, the terms "dating relationship" and "marriage" were mutually exclusive as used in the statute. *Id*.

Chief Justice Wright also determined that as a result of the specific verb tenses utilized in § 71.0021(b), the Texas Legislature intended the phrase "have had a dating relationship" to mean "the dating relationship must have recently ended." *Id*. at 683. Thus, even if § 71.0021(b) was applicable to a defendant's spouse, Chief Justice Wright found that "as a matter of law," a dating period occurring approximately three and half years prior to the assault did "not fit within the concept of 'recently.'" *Id*.

Finally, Chief Justice Wright also noted that the State could have plead alternative classes in the Indictment. *Id*. at 684. Chief Justice Wright pointed out that the State chose not do so in this case; therefore, the State "limited itself to the

13

'dating relationship' provision" of § 22.01(b)(2). *Id.* Chief Justice Wright then correctly found the State had alleged a single narrow element for which there was no supporting evidence. *Id.* at 685. Because there was a fatal variance between the indictment and the proof, Chief Justice Wright properly concluded Sanchez's conviction for the third-degree felony of assault family violence could not be affirmed on appeal. *Id.*

● Conclusion.

The Texas Legislature has gone to great lengths to identify and distinguish the marriage relationship. *See* **TEX. FAM. CODE ANN. § 2.001** *et seq.* (LEXIS 2015). By defining the separate classes of assault victims in § 71.0021(b), § 71.003, and § 71.005, the Texas Legislature clearly intended to distinguish between a dating relationship and a marriage relationship. If the majority justices' interpretation is upheld, all language found in these statutes pertaining to marriage would be superfluous because the marriage relationship will be subsumed in the definition of "dating relationship" found in § 71.0021(b).

In fact, the distinguishment of the marriage relationship in § 71.0021(b), § 71.003, and § 71.005 would become unnecessary as all marriages would be subject to the incredibly broad definition of a "dating relationship." For example, if the majority justices' reasoning is correct, a defendant who has been married for thirty

years can be convicted of a third-degree felony for assaulting his spouse under § 22.01(b)(2) and § 71.0021(b) based on their past dating relationship which occurred thirty-one years ago.

Recognizing this irrational conclusion, Chief Justice Wright noted in his dissent that under the majority justices' holding, it would not matter when a dating relationship existed, "even decades prior," just so long as the relationship ended at some indefinite time prior to the time of the assault being prosecuted. *Sanchez*, 460 S.W.2d 683. This absurd conclusion was clearly not the intent of the Texas Legislature in enacting § 22.01(b)(2) and § 71.0021(b).

When § 71.0021(b), § 71.003, and § 71.005 are read together, it becomes clear that a defendant's spouse falls within the protected class of family and/or household, and not within the purview of a "dating relationship." Such common sense interpretation is the just and reasonable result intended by the Texas Legislature. *See* **TEX. GOV'T CODE ANN. § 311.021(3)** (LEXIS 2015) (in enacting a statute, it is presumed that a just and reasonable result is intended).

In this case, the State simply failed to err on the side of caution and include alternative elements in the Indictment. As a result, the State limited its case against Sanchez. When the evidence was presented at trial, the State could not meet its narrow burden of proof.

15

As such, this Court should not adopt the majority justices' strained interpretation of § 71.0021(b) simply to side-step the fatal variance clearly apparent on the Record of this case. To do so would set a poor precedent in future cases. This Court should therefore reverse the Appellate Court's ruling sustaining Sanchez's conviction of the third-degree felony of assault family violence as a matter of law.

## PRAYER FOR RELIEF

*WHEREFORE, PREMISES CONSIDERED*, Appellant Luis Sanchez respectfully prays that this Court 1) reverse the Appellate Court's majority ruling affirming Sanchez's third-degree felony conviction for assault family violence, 2) affirm Sanchez's conviction for simple assault, and 3) remand this case for a new trial solely as to punishment. Additionally, Sanchez prays that this Court grant him such other and further relief to which he may be entitled.

Respectfully submitted,

**M. MICHELE GREENE**
Attorney at Law
2833 Wildwood Ave.
Odessa, Texas 79761
Tel: (432) 238-1255
Email: mmg@michelegreenelaw.com

By:    /s/ M. Michele Greene
       M. Michele Greene
       State Bar No.00789966

       **Appellate Counsel for Appellant**
       **Luis Sanchez**

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Rules 9.4(e) and (i) of the TEXAS RULES OF APPELLATE PROCEDURE, the undersigned attorney of record certifies that the Brief on Petition for Discretionary Review contains **14-point** typeface for the body of the brief, **12-point** typeface for footnotes in the brief, and contains **3435** words, excluding those words identified as not being counted in Rule 9.4(i)(1) and was prepared on Word Perfect Version 9.

/s/ M. Michele Greene
M. Michele Greene

# CERTIFICATE OF SERVICE

I certify that a copy of the Appellant's Brief on Petition for Discretionary Review was served electronically on this the 17[h] day of August, 2015, to the following party and that the electronic transmission was reported as complete:

Michael Bloch
Ector County District Attorney's Office
Ector County Courthouse
300 N. Grant Ave. Rm. 305
Odessa, Texas 79761
MICHAEL.BLOCH@ectorcountytx.gov.

**Attorney for the State of Texas, Appellee**

/s/ M. Michele Greene
M. Michele Greene