Opinion filed March 5, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00279-CR

_____

## LUIS SANCHEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-37,135**

### O P I N I O N

The trial court found Luis Sanchez guilty of assault-family violence for assaulting a person with whom he "has or has had" a dating relationship, a third-degree felony. It assessed Sanchez's punishment at confinement for a term of six years and a $7,500 fine. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (West Supp. 2014). In a single issue on appeal, Appellant challenges the sufficiency of the evidence to support a finding that he "has or has had" a dating

relationship with the victim at the time of the alleged assault, and he also challenges the sufficiency of the evidence to support a finding that he committed an assault. We affirm.

Appellant and the victim in this case, Rachael Price, lived together in the same household from sometime in 2006 until December 18, 2009, the date of the assault. At some point during that time, Appellant and Rachael became married by virtue of the common law, and they also had a child together.

Rachael testified that, on the afternoon of December 18, she was watching television in her bedroom. The couple's two-year-old daughter was in a crib next to the bed. Appellant came into the bedroom, "threw" Rachael on the bed, and began "beating" her. Rachael did not know why Appellant was upset, but after he hit her in the head and on her side for a few minutes, he stopped hitting her. Rachael took their child into the bathroom and put her into a small tub to give her a bath. A short time later, Appellant returned. When he returned, Appellant pushed Rachael down to the floor and "started kicking [her] and hitting [her]." Appellant picked her up and held her by the throat with one hand while he held a knife to her throat with the other. Appellant told her that he would stop "if [she] told him the truth and confessed" to the many affairs in which he thought that Rachael was involved. Appellant eventually released Rachael and left the room.

After the second assault of the day, Rachael finished bathing the child and returned to her bedroom. An hour later, Appellant came back into the bedroom and dragged Rachael by her hair to an empty bedroom. Appellant wanted Rachael to call her coworker because Appellant believed that Rachael had been having an affair with the coworker's cousin. Appellant wanted Rachael to ask her coworker for the cousin's phone number. Rachael testified that Appellant wrapped a telephone cord around her neck and forced her to make the phone call. The cord was tight and restricted her breathing. She was short of breath and could hardly

2

speak during the phone call; her coworker asked her what was wrong. After Rachael ended the call with the coworker, Appellant released the phone cord, shoved her into a wall, and then left. These December 18 assaults were not the only times that Appellant had assaulted Rachael. Rachael also described the almost daily abuse that she had suffered at Appellant's hands in the weeks leading up to the December 18 assaults.

When Appellant finally stopped assaulting her, Rachael "tried to call in" to her employer, but the manager at the Walgreens store where she worked told her that she would probably be fired if she did not come to work that night; therefore, Rachael took the bus and went to work.

Rachael's father, Michael Weldon Price, picked her up after work. Because Rachael did not want to go home, she stayed at her father's house that night. The next morning, Appellant was "pounding on the door," and Michael called 911. Appellant left before the police arrived. The following day, while Appellant was in jail, he tried to phone Rachael. Michael answered the phone and refused to let Appellant talk to Rachael. During that phone call, Appellant told Michael, "I know. I am sorry. I did those things. I did all of those terrible things, but I still love Rachael and I want us to be a family."

Rachael first reported the assault to police on December 20. At that time, one Odessa police officer took her statement, and another took pictures of her injuries. Detective Angie Reyes interviewed Rachael. Rachael told Detective Reyes about the assault and about the almost daily abuse that she had suffered before the December 18 assaults. Detective Reyes obtained Rachael's medical records. The records showed that, in addition to the treatment for the December 18 injuries, Rachael was treated at an emergency room in Odessa on December 8 for an assault that she said had occurred on December 3. As a result of the December 3 assault, Rachael suffered significant swelling and bruising to her left

hip and thigh, both eyes, and one of her hands; she was prescribed pain medicine. Rachael had claimed that she suffered those injuries when she was attacked on the way to a bus stop. During her interview with Detective Reyes, Rachael admitted that she had lied and that Appellant caused those injuries as well.

Detective Reyes phoned Appellant. When she identified herself as a detective with the Odessa Police Department, the call was disconnected. Appellant later phoned Detective Reyes and agreed to come to the police station for an interview; he neither appeared nor phoned, nor did he reschedule the interview. Because she believed that the evidence was consistent with Rachael's story, Detective Reyes obtained a warrant for Appellant's arrest. In March 2010, the grand jury returned an indictment against Appellant for the third-degree felony assault upon Rachael, a person with whom he "has or has had" a dating relationship.

Appellant pleaded not guilty to the charge in the indictment and proceeded to trial on the theory that he did not assault Rachael and that he did not cause her injuries. The trial court disagreed and found Appellant guilty of third-degree felony assault as charged in the indictment.

We first consider Appellant's argument that the State failed to offer any evidence to prove the elements necessary to increase the assault offense from a Class A misdemeanor to a third-degree felony as alleged in the indictment. To increase the assault in this case to a third-degree felony, the State specifically alleged that Appellant impeded normal breathing or circulation of "Rach[a]el Price, a person with whom [Appellant] has or has had a dating relationship, as described by Section 71.0021(b), Family [C]ode." *See* TEX. FAM. CODE ANN. § 71.0021 (West 2014). Appellant argues that the State presented no evidence at trial that such a "dating relationship" existed between Rachael and him at the time of the assault. Appellant maintains that the evidence conclusively established that

4

he and Rachael were married at the time of the assault. It is Appellant's position that, because he and Rachael were married at the time of the alleged assault, Rachael was not a person with whom he "has or has had" a dating relationship. Therefore, Appellant urges that, because he was married to Rachael at the time of the alleged assault and not in a dating relationship with her, the trial court could not convict him of third-degree felony assault as expressly charged in the indictment. We disagree.

Appellant's position is founded in part on the fact that in June 2010, subsequent to the date of the alleged assault, Rachael filed a petition for divorce. In that petition, she sought a divorce from Appellant and alleged that he was "guilty of cruel treatment . . . of a nature that renders further living together insupportable." A trial court eventually granted Rachael's petition for divorce from Appellant prior to Appellant's trial on the criminal charges.

Appellant's first challenge to the sufficiency of the evidence is actually a complaint about a variance between the allegations in the indictment and the proof at trial. *See Gollihar v. State*, 46 S.W.3d 243, 247 (Tex. Crim. App. 2001). "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id.* at 246. "A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Id.*

The State argues that, "[e]ven assuming for the sake of argument that a common-law marriage was indisputably established here, in cases involving a sufficiency claim based on a variance," the reviewing court does not apply traditional sufficiency standards but "must instead consider the materiality of the variance." The State argues that the variance in this case was immaterial and that the evidence is, thus, sufficient to support the conviction.

5

The Court of Criminal Appeals has instructed, however, that "Texas 'immaterial variance' law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the indictment." *Cada v. State*, 334 S.W.3d 766, 774 (Tex. Crim. App. 2011). Due process requires the State to prove every element of the crime charged. *Id.* at 772–73 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). "The focus of the inquiry under . . . *Gollihar* 'is upon the elements of the offense.'" *Id.* at 773 (quoting *Gollihar*, 46 S.W.3d at 258 (Keller, P.J., concurring)). The "elements of the offense" are the elements that the State is required to plead and prove. We measure the sufficiency of the evidence by the specific elements that the State has alleged in the indictment. *Id.* at 773–74. "Thus, if the State pleads one specific element from a penal offense that contains alternatives for that element, the sufficiency of the evidence is measured by the element that was actually pleaded, not any other statutory alternative element" that was not pleaded. *Id.* at 774.

An actor commits third-degree assault by, among other ways not relevant here, impeding the normal breathing or circulation of the blood of a person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth. The "person" mentioned in the statute includes persons involved with the actor in several different types of situations as provided in Sections 71.0021(b), 71.003, 71.005 of the Texas Family Code. However, insofar as this case is concerned, the State limited its charge to a "person" with whom Appellant "has or has had" a dating relationship. PENAL § 22.01(b)(2)(B); *see* FAM. §§ 71.0021(b), 71.003, 71.005. A dating relationship is defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." FAM. § 71.0021(a)(1)(A), (b).

As a result of the intervening divorce proceedings, the evidence conclusively negates the possibility that the alleged assault occurred between individuals who

"have" a dating relationship. In this regard, we agree with the dissent's proposition that individuals in a marriage are not in a dating relationship. Accordingly, we direct our attention to the "have had" element of Section 71.0021(b). Specifically, we must determine if the evidence establishes that the alleged assault occurred between individuals who "have had" a dating relationship. *Id.*

When we construe a statute, we attempt to determine the intent or purpose of those who enacted the statute. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). We first examine the literal text of the statute. *Id.* In so doing, "we read words and phrases in context and construe them according to the rules of grammar and usage." *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008). We are required to "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997).

There are at least two decisions in which the appellate courts of this State dealt with the "dating relationship" issue with respect to the "have had" element of the statute. In *White*, decided in an unpublished opinion by the Dallas Court of Appeals, the defendant was convicted of first-degree aggravated assault. *White v. State*, No. 05-09-00112-CR, 2010 WL 2951748 (Tex. App.—Dallas July 29, 2010, pet. ref'd) (mem. op., not designated for publication). There, the defendant and the victim dated for about two months. They ceased dating a few weeks before the assault. The State alleged in the indictment that the defendant "has or has had a dating relationship with the complainant and was a member of her family and household." *Id.* at *2. The court held that the fact that the defendant and the victim had stopped dating shortly before the assault was irrelevant because Section 71.0021(b) provided that a dating relationship included persons who *have had* a

continuing romantic or intimate relationship. *White* is instructive in the case before us, and we see nothing that would require a different application here.

*Hill* is another case in which an appellate court addressed Section 71.0021(b). *Hill v. State*, No. 01-10-00926-CR, 2012 WL 983338 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication). The State charged Hill with assaulting a person with whom he had a dating relationship. Hill claimed that the evidence was insufficient to prove that he had a dating relationship with the complainant. Hill and the complainant "lived together from 2006 until 2007" and for a few days in 2008. Hill offered conflicting evidence about the date of the breakup of that relationship. He initially said that he and the complainant stopped dating the year before the assault. Later, he said that the breakup occurred only a month before the assault. It was Hill's claim that the State was required to prove that the relationship was ongoing at the time of trial and that, in the absence of that proof, the evidence was insufficient.

The court in *Hill* rejected Hill's argument because that position "would render the words 'have had' meaningless." *Id.* at *3 The court concluded "that the inclusion of the words 'have had' permitted the jury to find that a dating relationship existed if it found that Hill and [the victim] had a continuing relationship of a romantic or intimate nature in the past, regardless of whether that relationship was ongoing at the time of the assault." *Id.*

We agree with the holdings in *White* and *Hill* that the "have had" element of Section 71.0021(b) eliminates the requirement of an ongoing dating relationship at the time of the alleged assault. Accordingly, we conclude that, because Appellant and Rachael had a dating relationship in the past, such a relationship falls within the provisions of the statute that increase this assault to a third-degree felony.

Appellant also argues that the evidence is insufficient to prove that he committed the offense of assault. When we review the sufficiency of the evidence,

8

we consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 316; *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012). This standard requires us to defer to the factfinder to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences to reach ultimate facts. *See Jackson*, 443 U.S. at 316; *Gross*, 380 S.W.3d at 185. The factfinder is the sole judge of the credibility of the witnesses, and it is free to accept or reject any or all of a witness's testimony. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

A person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." PENAL § 22.01(a)(1). Bodily injury means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8) (West Supp. 2014).

Rachael testified that Appellant beat her, dragged her by her hair, held a knife to her throat, wrapped a telephone cord around her neck, and forced her to phone her coworker to obtain the cousin's phone number. Rachael testified that the cord was tight and restricted her breathing and that she could hardly speak during the phone call. When Appellant finally released Rachael, he shoved her against the wall and left the room. Rachael had marks on her neck when she went to work that evening. The State introduced into evidence thirteen photographs of Rachael's injuries. The photographs were taken two days after the assault, and the marks were still visible at that time. Rachael testified that the mark on her neck shown in one of the photographs was caused by Appellant when he tightened the phone cord around her neck. This evidence is sufficient to support a finding that Appellant committed the assault.

It is Appellant's contention that Rachael's testimony is not credible in light of the fact that Rachael had given different explanations for her injuries in the past.

9

Appellant argues that "[a] small scratch on [Rachael's] neck did not prove beyond a reasonable doubt that [Appellant] kicked her, beat her, drug her down the hall by her hair, and attempted to strangle her by wrapping an extension cord around her neck." That, however, is not the only evidence of assault. The pictures showing the marks on Rachael's neck support her testimony that Appellant assaulted her. Because of Rachael's credibility, Appellant contends that, without tangible evidence, expert testimony, or medical records to support her allegations, the evidence is insufficient to show that he assaulted Rachael. As discussed above, the factfinder is free to believe or disbelieve a witness. *See Saxton,* 804 S.W.2d at 914.

We have reviewed the evidence in accordance with the well-established standards of review, and we conclude that there is sufficient evidence to support a conclusion that Appellant intentionally, knowingly, or recklessly caused bodily injury to Rachael Price. Appellant's sole issue on appeal is overruled.

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE

March 5, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.