FILED IN
COURT OF CRIMINAL APPEALS

Otober 2, 2015

ABEL ACOSTA, CLERK

PD-0372-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/2/2015 2:06:32 PM
Accepted 10/2/2015 2:18:45 PM
ABEL ACOSTA
CLERK

**NO. PD-0372-15**

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

**LUIS SANCHEZ,**
**Appellant**

**V.**

**STATE OF TEXAS,**
**Appellee**

**On Petition for Discretionary Review**
**from the 11th Court of Appeals**
**No. 11-12-00279-CR**

**On appeal from the 161st Judicial District Court**
**of Ector County, Texas**
**Trial Court Cause Number B-37,135**

**STATE'S APPELLATE BRIEF**

**Michael Bloch**
Assistant District Attorney
Ector County District Attorney's Office

Ector County Courthouse
300 N. Grant, Room 305
Odessa, Texas 79761
(432) 498-4230 Phone
(432) 498-4293 Fax
michael.bloch@ectorcountytx.gov
**Attorney for the State**

1

## Identity of Parties and Counsel

ATTORNEYS FOR THE STATE:

At trial:  Dusty Gallivan, Assistant District Attorney
On appeal:  Michael Bloch, Assistant District Attorney

Ector County Courthouse
300 N. Grant, Room 305
Odessa, Texas 79761

ATTORNEY FOR THE APPELLANT AT TRIAL:

William R. Bowden, Jr.
221 W. 4th St.
Odessa, Texas 79761

ATTORNEY FOR THE APPELLANT ON DIRECT APPEAL AND ON PDR:

M. Michele Greene
2833 Wildwood
Odessa, Texas 79761

TRIAL COURT:

Hon. John W. Smith
161st District Court of Ector County
300 N. Grant, Room 316
Odessa, Texas 79761

# Table of Contents

Identity of Parties and Counsel ................................................................ 2

Index of Authorities .............................................................................4

Statement of the Case.............................................................................7

Statement Regarding Oral Argument ........................................................7

Procedural History .................................................................................7

Issues Presented ................................................................................... 8

Statement of Facts................................................................................ 8

Summary of the Argument...................................................................... 10

Argument

      I.    Could the trial court have rationally concluded that Appellant and the victim, Rachael Price, were never married and that the assault occurred between individuals who merely "have had" a dating relationship..................................11

      II.    Did the 11th Court of Appeals err when it determined that Appellant could be convicted of assaulting his former spouse based solely on their past dating relationship under Tex. Pen. Code § 22.01 (b) (2) and Tex. Fam. Code § 71.0021 (b)?........13

Conclusion and Prayer ...............................................................19

Certificate of Service ...............................................................20

Certificate of Compliance ...............................................................20

## Index of Authorities

**CASES**

*Baird v. State*,
398 S.W.3d 220, 229 (Tex. Crim. App. 2013) ......................................................15

*Bays v. State*,
396 S.W.3d 580, 585 (Tex. Crim. App. 2013) ......................................................15

*Bingham v. State*,
913 S.W.2d 208, 209 (Tex. Crim. App. 1995) ......................................................14

*Halton v. State*,
2015 Tex. App. LEXIS 6769 (Tex. App. Dallas July 1, 2015, no pet.) .................17

*Hill v. State*,
No. 01-10-00926-CR, 2012 Tex. App. LEXIS 2225, 2012 WL 983338 (Tex.
App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) ...............................................17

*Preston v. State*,
2015 Tex. App. LEXIS 7240 (Tex. App. Dallas July 14, 2015, no pet.) ...............17

*Sanchez v. State,*
460 S.W.3d 675 (Tex. App. – Eastland 2015, pet. granted)........7, 13, 14, 15, 17, 18

*Stanul v. State*,
870 S.W.2d 329, 334 (Tex. App.--Austin 1994, pet. ref'd) ....................................16

*State v. Hardy*,
963 S.W.2d 516, 520 (Tex. Crim. App. 1997) ......................................................14

*Tovar v. State*,
949 S.W.2d 370, 373 (Tex. App. San Antonio 1997) *aff'd* 978 S.W.2d 584  (Tex.
Crim. App. 1998) ...................................................................................................16

*White v. State*,
No. 05-09-00112-CR, 2010 Tex. App. LEXIS 5985, 2010 WL 2951748 (Tex. App.—Dallas July 29, 2010, pet. ref'd) ....................................................................17

**STATUTES**

Tex. Fam. Code § 2.401 (a) (2)...............................................................................12

Tex. Fam. Code § 71.0021 (b) ............................................. 8, 10, 11, 13, 15, 16, 18

Tex. Gov't Code § 311.023....................................................................................15

Tex. Pen. Code § 22.01 (b) (2)...................................................................8, 10, 13, 15

Tex. Pen. Code § 22.01 (b) (2) (B) .............................................................11, 16, 18

## NO. PD-0372-15

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS


**LUIS SANCHEZ,**
**Appellant**


**V.**


**STATE OF TEXAS,**
**Appellee**


**On Petition for Discretionary Review**
**from the 11th Court of Appeals**
**No. 11-12-00279-CR**


**On appeal from the 161st Judicial District Court**
**of Ector County, Texas**
**Trial Court Cause Number B-37,135**


**STATE'S APPELLATE BRIEF**


**TO THE HONORABLE JUDGES OF SAID COURT:**

**COMES NOW**, Appellee, the **STATE OF TEXAS**, by and through its District Attorney, R.N. (Bobby) Bland and Assistant District Attorney Michael Bloch and presents for receipt its Appellate Brief in the above-styled and numbered cause of action.

## Statement of the Case

On March 22, 2010, Luis Sanchez, hereinafter Appellant, was indicted for the third degree felony offense of assault-family violence; the indictment alleged that Appellant knowingly or recklessly impeded the normal breathing or circulation of the blood of victim Rachel Price, with whom he has or has had a dating relationship, by applying pressure to Price's throat or neck. CR 5. Immediately prior to trial, Appellant pled not guilty. 4 RR 8. Appellant waived his right to a jury trial, and the case was tried before the bench on September 6, 2012. 4 RR 6-138. The trial court found Appellant guilty, and sentenced him to six years incarceration in the TDCJ – Institutional Division. *Id*. at 138; 5 RR 10.

## Statement Regarding Oral Argument

This Court noted that oral argument would not be permitted in this case.

## Procedural History

Appellant filed a brief on direct appeal with the 11th Court of Appeals on August 22, 2013. The Court of Appeals affirmed Appellant's conviction. *See Sanchez v. State,* 460 S.W.3d 675 (Tex. App. – Eastland 2015, pet. granted). Appellant filed his petition for discretionary review on April 21, 2015. This Court granted Appellant's petition for discretionary review on July 1, 2015. Appellant filed his brief in this PDR on August 18, 2015.

## Issues Presented

1. Could the trial court have rationally concluded that Appellant and the victim, Rachael Price, were never married and that the assault occurred between individuals who merely "have had" a dating relationship?

2. Did the 11th Court of Appeals err when it determined that Appellant could be convicted of assaulting his former spouse based solely on their past dating relationship under Tex. Pen. Code § 22.01 (b) (2) and Tex. Fam. Code § 71.0021 (b)?

## Statement of Facts

Only the facts relevant to Appellant's claims will be discussed here. During the trial, Price testified that her and Appellant had been in a relationship for about two and a half years, beginning in June of 2006 and ending in December of 2009. 5 RR 19. On cross-examination, Appellant brought up the issue as to whether they were in fact married. Id. at 47. Price initially stated that they were "common law" and later divorced. Id. She acknowledged DX 1, which was a divorce petition filed on her behalf. However, the following exchange also occurred:

Q: Isn't it true, Ms. Price, that you were married with this man from 2006 on?

A: No.

Q:     Correct?

A:     No.

Q:     Okay.  When did you marry him?

A:     We never.

Q:     I am not talking about a formal marriage, I am talking about when did you consider yourself married?

A:     I never did.

Q:     You never did?

A:     No.

*Id.* at 48.  She went on to testify that while she did seek a divorce from Appellant and filed a pleading alleging that they were common law married, she did so only because she was advised to do so by her legal aid attorney, who cited the length of time Price and Appellant lived together and the fact that they filed one or more joint tax returns.  *Id.* at 49, 67.

Price further testified on redirect that

Q:  Defendant's Exhibit No. 1 the petition for divorce that you filed?

A:  Yes.

Q:  Or that was filed on your behalf?

A:  Yes.

Q:   Did you use an attorney to file this for you?

A:   Yes.

Q:   Prior to this event when you sought legal help, did you consider yourself married to [Appellant]?

A:   No.

5 RR 67.

## Summary of the Argument

The trial court could have rationally concluded that Price and Appellant were never married because Price never agreed to marry Appellant and did not consider herself married to Appellant.  Given Price's testimony, the trial court as finder of fact could reasonably conclude that the elements of common law marriage were never met in that relationship, divorce petition notwithstanding. Hence, Price and Appellant were merely in a dating relationship as the indictment alleged, and the State proved that element at trial.

The Court of Appeals correctly found that Appellant could be convicted of assaulting his former spouse based solely on their past dating relationship under Tex. Pen. Code § 22.01 (b) (2) and Tex. Fam. Code § 71.0021 (b).  Ordinarily, language is the best indicator of legislative intent and if the meaning should have been plain to the legislators who voted for it, reviewing courts should give effect to

10

the plain meaning of the language. The relevant language in this case is not ambiguous and does not lead to an absurd result. Based upon the clear wording of §71.0021 and Penal Code § 22.01 (b) (2) (B), the legislature intended to punish as third degree felony family violence one who impedes breathing or circulation of a victim with whom the perpetrator had a dating relationship, no matter how long ago that relationship was. The State alleged in its indictment that Appellant caused bodily injury to Price, "a person with whom the Defendant has or has had a dating relationship, as described by 71.0021 (b), Family [C]ode" CR 5. The *Sanchez* majority correctly found that there was no fatal variance.

### Argument

I. **Could the trial court have rationally concluded that Appellant and the victim, Rachael Price, were never married and that the assault occurred between individuals who merely "have had" a dating relationship?**

In the indictment, the State alleged that Appellant caused bodily injury to Price, "a person with whom the Defendant has or has had a dating relationship, as described by Section 71.0021(b), Family code…" Appellant contends he is entitled to an acquittal from this Court because Appellant and Price were not merely in a dating relationship, but were instead common law spouses. The State

11

contends that the evidence adduced at trial did not necessarily show that they were in fact married. The State made this argument in its brief on direct appeal, but the Court of Appeals' opinion ruled that "[a]s a result of the intervening divorce proceedings, the evidence conclusively negates the possibility that the alleged assault occurred between individuals who 'have' a dating relationship." The State would respectfully request this Court visit the issue.

During her testimony, Price indicated that she and Appellant were "formerly in a relationship" and had a child together. 4 RR 18-19. The relationship began in June 2006 and ended December 2009. *Id*. at 19. As previously noted, while acknowledging the common-law divorce petition filed on her behalf by legal aid, Price never considered herself married to Appellant. *Id*. at 48. She testified that while she did seek a divorce from Appellant and filed a pleading alleging that they were common law married, she did so only because she was advised to do so by her legal aid attorney, who cited the length of time Price and Appellant lived together and the fact that they filed one or more joint tax returns. *Id*. at 49, 67. Price did not consider herself married to Appellant prior to seeking that legal assistance. *Id*. at 67. Tex. Fam. Code § 2.401 (a) (2) provides that a man and woman are "common-law" married if the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and

12

there represented to others that they were married. Given Price's testimony, the trial court as finder of fact could reasonably conclude that Price never agreed to marry Appellant, and hence the elements of common law marriage were never met in that relationship, divorce petition notwithstanding. The trial court could have rationally concluded that Price and Appellant's were merely in a dating relationship, which was well-supported by the evidence. *See* 4 RR 18-19; 67.

II.    **Did the 11th Court of Appeals err when it determined that Appellant could be convicted of assaulting his former spouse based solely on their past dating relationship under Tex. Pen. Code § 22.01 (b) (2) and Tex. Fam. Code § 71.0021 (b)?**

As this Court is aware, Appellant contends that the majority opinion in *Sanchez* erred when it found that the evidence showed that the assault occurred between Appellant and Price and constituted a third degree felony under Penal Code § 22.01 (b) (2) because Appellant and Price "have had" a previous dating relationship as that term appears in Tex. Fam. Code § 71.0021 (b). The majority opinion notes that while there was a marriage that occurred, there was no fatal variance between the indictment and the proof at trial because there was a dating relationship between Appellant and Price in the past. *Sanchez*, 460 S.W.3d at 680. Appellant contends that the intervening marriage causes there to be a fatal variance

13

between the indictment and the proof raised at trial because a marriage and dating relationship are two separate and distinct categories. Further, Appellant points out the dissenting opinion's statement that [the majority's interpretation of "have had" a dating relationship]:

> would mean that it would not matter when a dating relationship existed, even decades prior, and would give no regard to intervening circumstances, so long as the relationship ended at some indefinite time prior to the time of an assault for which the State charges a person. The words that the legislature actually used do not indicate to me that the legislature intended that result.

*Sanchez*, 460 S.W.3d at 683. Appellant characterizes such conclusion as absurd and contends that such conclusion was clearly not the intent of the Texas Legislature. Appellant's brief at 15.

Ordinarily, language is the best indicator of legislative intent and if the meaning should have been plain to the legislators who voted for it, reviewing courts should give effect to the plain meaning of the language. *Bingham v. State*, 913 S.W.2d 208, 209 (Tex. Crim. App. 1995). This Court should "presume that every word in a statute has been used for a purpose and that each word, phrase, and sentence should be given effect if reasonably possible." *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997). If, on the other hand, the meaning of the literal text of a statute is ambiguous or would cause an absurd result, considering extra-

textual factors to discern the Legislature's intent in enacting the statute may be appropriate. *Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013).

As for ambiguity, it exists when a statute may be understood by reasonably well-informed persons to have two or more different meanings. *Bays,* 396 S.W.3d at 585; *see also Baird v. State*, 398 S.W.3d 220, 229 (Tex. Crim. App. 2013) (statute is ambiguous when the language it employs is "reasonably susceptible to more than one understanding"). In construing ambiguous statutes, relevant factors that this Court may consider include the legislative history behind the statute and the consequences of a particular construction. *See Bays*, 396 S.W.3d at 585; Tex. Gov't Code § 311.023. Both Appellant and the *Sanchez* dissent express the belief that the majority's opinion is not in line with legislative intent. With regard to the statute in issue, there is nothing ambiguous about it. Tex. Fam. Code § 71.0021 (b) states that "For purposes of this title, "dating relationship" means a relationship between individuals who have or *have had* a continuing relationship of a romantic or intimate nature." [emphasis supplied]. Clearly, the plain meaning of the statute is that a defendant may be convicted of family violence under Tex. Pen. Code § 22.01 (b) (2) if at any point during or prior to the offense the defendant and the victim had a dating relationship. There is nothing ambiguous about that.

15

Reviewing courts will not give effect to a statute's plain meaning, however, if to do so would reap absurd results. *See Stanul v. State*, 870 S.W.2d 329, 334 (Tex. App.--Austin 1994, pet. ref'd). In this case, Appellant contends that the plain meaning of the statute is absurd because the majority's interpretation of "has had" a dating relationship would mean that it would not matter when a dating relationship existed, even decades prior, just so long as the relationship ended at some indefinite time prior to the time of the assault being prosecuted. Does this make the clear wording of Penal Code § 22.01 (b) (2) (B) and Tex. Fam. Code § 71.0021 (b) absurd? That the result of a statute may seem harsh does not make the result absurd. *Tovar v. State*, 949 S.W.2d 370, 373 (Tex. App. San Antonio 1997) *aff'd* 978 S.W.2d 584 (Tex. Crim. App. 1998). Based upon the clear wording in the statute, the legislature obviously intended to punish under Penal Code §22.01 (b) (2) (B) family violence involving a victim with whom the perpetrator had a dating relationship, no matter how long ago that relationship was. That may be harsh, but by no means absurd. And, had the legislature intended for a prosecution to be barred because of a certain elapse of time between the end of the dating relationship and the subsequent assault, it could have certainly put such a provision in the statute. It did not.

16

In support of their decision, the *Sanchez* majority cited to two unpublished opinions from sister Courts: *White v. State*, No. 05-09-00112-CR, 2010 Tex. App. LEXIS 5985, 2010 WL 2951748 (Tex. App.—Dallas July 29, 2010, pet. ref'd) and *Hill v. State*, No. 01-10-00926-CR, 2012 Tex. App. LEXIS 2225, 2012 WL 983338 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.). *Sanchez*, 460 S.W.3d at 680. These holdings provide that the "have had" element of § 71.0021 (b) eliminates the requirement of an ongoing dating relationship at the time of the alleged assault. *Id*.

Two more recent Court of Appeals opinions further support that position. *See Preston v. State*, 2015 Tex. App. LEXIS 7240 (Tex. App. Dallas July 14, 2015, no pet.)(mem op. not designated for publication), ("A past continuing relationship of an intimate nature is sufficient to qualify as a 'dating relationship'"); *Halton v. State*, 2015 Tex. App. LEXIS 6769 (Tex. App. Dallas July 1, 2015, no pet.)(mem. op. not designated for publication). ("[T]he family code definition of dating relationship encompasses both a contemporaneous and a past dating relationship").

*White, Hill, Preston* and *Halton* all stand for the proposition that a dating relationship need not be ongoing at the time of the family violence assault. The past dating relationship in this case falls within the provisions of the statute that increase this assault to a third-degree felony. Based upon the clear wording of

17

Family Code §71.0021 and Penal Code § 22.01 (b) (2) (B), the legislature intended to punish as third degree felony family violence one who impedes breathing or circulation of a victim with whom the perpetrator had a dating relationship, no matter how long ago that relationship was. The *Sanchez* dissent's claim that "have had" a past dating relationship means that the relationship must have ended recently is, with all due respect, unworkable. *Sanchez*, 460 S.W.3d at 683. How recently would the relationship have to have ended? A week? A month? A year? The statute doesn't say, so how would we know? Indeed, had the legislature intended for there to be a cut-off time the statute would have said so. The State alleged in its indictment that Appellant caused bodily injury to Price, "a person with whom the Defendant has or has had a dating relationship, as described by 71.0021 (b), Family [C]ode" CR 5. The *Sanchez* majority correctly found that there was no variance.

Appellant's point of error should be overruled.

## Conclusion and Prayer

The State of Texas prays this Court overrule Appellant's point of error and affirm Appellant's conviction.

Respectfully Submitted,

**R.N. (Bobby) Bland**
Ector County District Attorney

BY: /s/ Michael Bloch
Michael Bloch
Assistant District Attorney
SBN 24009906

Ector County District Attorney's Office
Ector County Courthouse
300 N. Grant, Room 305
Odessa, Texas 79761
(432) 498-4230 Phone
(432) 498-4293 Fax
michael.bloch@ectorcountytx.gov

**CERTIFICATE OF SERVICE**

Pursuant to Rule 9.5 of the Texas Rules of Appellate Procedure, I certify that on this 2nd day of October, 2015, a copy of the foregoing State's Appellate Brief was served via efile to counsel for Appellant:

M. Michele Greene
2833 Wildwood
Odessa, Texas 79761

/s/ Michael Bloch
**Michael Bloch**
Assistant District Attorney

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief consists of 3,368 words and is typed in 14-point Times New Roman font.

/s/ Michael Bloch
**Michael Bloch**
Assistant District Attorney