

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0372-15

### LUIS SANCHEZ, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### ECTOR COUNTY

**MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and JOHNSON, KEASLER, ALCALA, RICHARDSON, YEARY, and NEWELL, JJ., joined. HERVEY, J., concurred.**

### O P I N I O N

Appellant, Luis Sanchez, was charged with the third-degree felony of assaulting an individual with whom he "has or has had" a dating relationship. The indictment alleged that Appellant knowingly or recklessly impeded the normal breathing or circulation of Rachael Price ["Price"] by applying pressure to Price's throat or neck. The trial court found Appellant guilty in a bench trial and sentenced him to six years' imprisonment and a $7,500 fine. The Eastland Court of Appeals affirmed Appellant's conviction, and Appellant filed a petition for discretionary

review. We granted Appellant's petition in order to consider whether a defendant can be convicted of assaulting his spouse based solely on their past dating relationship under Texas Penal Code § 22.01(b)(2) and Texas Family Code § 71.0021.

**FACTS**

On December 18, 2009, Appellant assaulted Price several times in their shared home. During the first incident, Appellant threw Price onto their bed and hit her on her side and her head, with their two-year-old daughter lying in the crib next to them. Later, when Price was giving their child a bath, Appellant pushed Price to the floor, kicked and hit her, and held a knife to her throat. In the final incident, Appellant dragged Price by her hair from one bedroom to another, and he wrapped a telephone cord around her neck while forcing her to make a phone call. The cord was wrapped tight enough around Price's neck to restrict her breathing and to leave markings. After Price ended the phone call, Appellant pushed Price into a wall and left. Price reported the assaults a few days later, and a warrant was issued for Appellant's arrest. Appellant was charged with the third-degree felony of impeding the breathing or circulation of Price, someone with whom he "has or has had" a dating relationship.

Appellant and Price were in a relationship from June of 2006 until December of 2009. Sometime in August of 2006, Appellant and Price were married by virtue of the common law. This marriage ended when Price filed a petition for divorce in June of 2010 and the petition was granted. During Appellant's bench trial, Price's father testified that there was no question as to whether Appellant and his daughter were in a common-law marriage. Price, however, asserted that she never considered herself married to Appellant. Price stated that she filed the petition for divorce only upon the advice of her legal aid attorney, who recommended the filing based on the

length of Price and Appellant's cohabitation and their joint tax returns. The trial court ultimately found Appellant guilty of the charge alleged in the indictment.

## COURT OF APPEALS

On appeal, Appellant argued that the trial court erred in convicting him of third-degree felony assault because, at the time of the assault, he was not in a dating relationship with Price. *Sanchez v. State*, 460 S.W.3d 675, 678 (Tex. App.—Eastland 2015, pet. granted). Appellant claimed there was a variance between allegations in the indictment and the proof at trial. *Id.* at 679. The State argued that the variance was immaterial. *Id.* The court of appeals upheld the conviction, deciding that Appellant and Price's dating relationship prior to their marriage satisfied the provision that enhanced the assault offense from a Class A misdemeanor to a third-degree felony. *Id.* at 680. The court of appeals stated that the divorce proceedings prior to Appellant's trial conclusively proved that Appellant and Price were married when the assault occurred. *Id.* at 679. Appellant and Price were therefore not in a dating relationship at the time of the assault. *Id.* The court of appeals then examined the "has had" element of Texas Family Code § 71.0021. *Id.* Looking to *White v. State*, No. 05–09–00112–R, 2010 Tex. App. LEXIS 5985 (Tex. App.—Dallas July 29, 2010, pet. ref'd) (mem. op., not designated for publication) and *Hill v. State*, No. 01–10–00926–CR, 2012 Tex. App. LEXIS 2225 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication), the court concluded that the "has had" language "eliminates the requirement of an ongoing dating relationship at the time of the alleged assault." *Sanchez*, 460 S.W.3d at 680.

In a dissenting and concurring opinion, Chief Justice Wright reasoned that because the legislature chose the term "has had" in the present perfect tense rather than "had had," it did not

intend for the statute to include every dating relationship within a person's lifetime. *Id.* at 683.

Chief Justice Wright concluded that the legislature must have intended for the "has had" language to apply to relationships that have recently ended. *Id.* Appellant's dating relationship with Price ended sometime between 2006 and 2009, which Justice Wright found fell outside of what is recent. *Id.* Chief Justice Wright concluded that the State proved only the misdemeanor offense of assault and that the variance was fatal. *Id.* at 685.

## ARGUMENTS OF THE PARTIES

*Appellant's Argument*

Appellant argues that the only element pled by the State in the indictment was Texas Family Code § 71.0021. Therefore, no other alternative statutory elements were available to the State, and it was limited to proving that Appellant assaulted an individual with whom he has or has had a dating relationship. Appellant says that the evidence establishes that he and Price were spouses at the time of the assault. Appellant argues that because he and Price were married when the assault occurred, he was not in a dating relationship with Price.

Appellant contends that there is a fatal variance between the allegations in the charging instrument and the proof introduced by the State. Based on the evidence presented at trial, Price was a member of Appellant's family under Section 71.003 and a member of Appellant's household under Section 71.005, but the State alleged neither element in the indictment. Appellant says that the court of appeals's decision makes the spousal relationship indistinguishable from a dating relationship. According to Appellant, the decision subsumes the spousal relationship into the category of dating relationship when the legislature intended for the two categories to be separate and distinct.

The State argues that the plain language of the statute reads that if the defendant and the victim had a dating relationship at any time prior to or during the offense, the defendant may be convicted under the enhancement provision of Texas Penal Code § 22.01(b)(2). Furthermore, the State says that applying the plain meaning of the statute does not lead to an absurd result. The State contends that simply because the statute's result appears to be harsh does not make the result absurd. The State argues that the legislature intended to punish the perpetrators of assault-family violence involving a dating relationship, no matter how long ago that relationship occurred. According to the State, the legislature could have explicitly limited the amount of time between the end of the dating relationship and the time of the assault in Section 71.0021, but it chose not to. Therefore, the State contends, the court of appeals held correctly that there was no variance.

## CASELAW

In *White v. State*, the defendant claimed that he was not in a dating relationship with the victim at the time of the assault as the relationship had ended a month prior. *White v. State*, 2010 Tex. App. LEXIS 5985, at *5. The court of appeals held that the fact that the defendant and victim were no longer dating at the time of the assault was irrelevant. *Id.* It was undisputed that the defendant and victim dated for several weeks, and the statutory definition of "dating relationship" includes individuals who have had a romantic or intimate relationship. *Id.*

Similarly, in *Hill v. State*, the court of appeals concluded that the State was not required to prove that the defendant and victim's dating relationship was ongoing at the time of the assault. *Hill v. State*, 2012 Tex. App. LEXIS 2225, at 9. The defendant claimed that the

"continuing relationship" language in the statute indicates that only a relationship continuing at the time of the assault satisfies the statute. *Id*. at 8. The court of appeals noted that the defendant's interpretation would render the phrase "has had" meaningless. *Id.* The "has had" phrase permits the dating relationship to have taken place in the past, "regardless of whether that relationship was ongoing at the time of the assault." *Id.*

**ANALYSIS**

Appellant was charged with the third-degree felony of assault-family violence. The offense of assault is generally a Class A misdemeanor, but is enhanced to a third-degree felony when the assault is committed against one of the three classes of individuals defined in the Texas Family Code and is committed by strangulation or suffocation. TEX. PEN. CODE § 22.01(b). The three classes delineated in the Texas Family Code are those in a "dating relationship," "family," and "household." A dating relationship is a "relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE § 71.0021(b). Family includes, for the purposes of this case, "individuals related by consanguinity or affinity" and "individuals who are the parents of the same child, without regard to marriage." TEX. FAM. CODE § 71.003.

Two individuals are related to one another by affinity if they are "married to each other." TEX. GOV'T CODE §573.024(a)(1). Thus, a person's spouse is included within the definition of family under Section 71.003. Finally, a household is "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." TEX. FAM. CODE § 71.005. Appellant's assault offense was enhanced by the charge that he assaulted someone with whom he "has or has had a dating relationship." TEX. FAM. CODE § 71.0021. The State

alleged no other alternatives in the indictment.

In interpreting the literal text of a statute, we must "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997). Texas Family Code § 71.0021 includes an actor who "has had" a dating relationship with the victim. The court of appeals cited *White* and *Hill* in holding that the statutory dating relationship under Section 71.0021 did not have to be ongoing at the time of the assault. *Sanchez*, 460 S.W.3d at 680. Under a plain language reading, the "has had" phrase allows the dating relationship to have ended prior to the assault. In this case, Appellant and Price dated from June of 2006 until some point in August of 2006. As someone who had a dating relationship with Price before the 2009 assault, Appellant satisfies the basic requirements of Section 71.0021 in enhancing the Class A misdemeanor assault to a third-degree felony. We hold that Appellant may be convicted of assaulting his spouse based solely on their past dating relationship.

We acknowledge that the facts of *White* and *Hill* are not identical to those of the case at bar. Appellant specifically pointed to the fact that he and Price were married at the time of the assault, which was not the case with the defendant and victim in either *White* or *Hill*. We do not believe this fact is significant. In both the aforementioned cases and the case before us, the dating relationship between the defendant and victim ended prior to the assault. Whether the dating relationship ended due to the dissolution of the relationship or the inception of a marriage is irrelevant. Nowhere does the statute indicate that a marriage somehow cancels out a prior dating relationship between the same individuals.

Appellant claims that convicting him based upon his prior dating relationship with his

spouse would meld dating relationships and spousal relationships into one indistinguishable category.  Appellant's argument implies that the State could choose to prove either a dating relationship or a spousal relationship while alleging only a single charge.  We do not believe this would be the case.  There may be significant overlap between the categories of dating relationships and marriage, especially in the case of a common-law marriage, but the overlap between the categories does not make them identical or interchangeable.  First of all, there is significant overlap between the categories of household and family as defined by the Texas Family Code—"individuals related by consanguinity or affinity," "individuals who are parents of the same child," and "foster children and foster parents" are more than likely to live together in the same dwelling.  In the case at bar, Price likely satisfies the criteria to be both a member of Appellant's household and a member of his family.  This does not mean that the categories of household and family are indistinguishable.

Furthermore, the categories of dating relationships and marriage are not interchangeable.  There are individuals who have a spousal relationship but no prior dating relationship with each other, for instance in an arranged marriage.  A defendant who assaults his spouse under these circumstances could be charged only with assault-family violence against a member of his family.  If the spousal relationship and dating relationship elements are truly indistinguishable, they could be freely interchanged.  This is not the case.

Finally, we are not convinced by the proposition that the legislature intended for the "has had" element of the statute to apply exclusively to dating relationships that ended recently.  In his dissenting and concurring opinion, Chief Justice Wright parsed the ramifications of the present perfect tense "has had" and the past perfect tense "had had."  *Sanchez*, 460 S.W.3d at 683.  The

uses of the present perfect tense include representing "an action that has been completed recently" and representing "an action that has been completed at some indefinite time in the past." *Id.* at 682, 683. Chief Justice Wright concluded that the legislature did not intend to apply the latter usage of the present perfect tense. *Id.* He reasoned that the legislature presented the two types of relationships disjunctively in the applicable sections of the statute, thereby separating them. *Id.* Also, the legislature would have used the past perfect tense had it intended to apply the statute to all dating relationships within a person's lifetime. *Id.*

This analysis produces few results, and it is unnecessary for the legislature to have used "had had" when the actual phrase in the current statute can functionally represent the same range of time (any time prior to the assault). Also, any separation of the concepts of dating relationships and marriage in the applicable sections of the statute has no impact on whether the phrase "has had" refers to "an action that has been completed at some indefinite time in the past." On another note, we agree with the State that, on a practical level, an insistence that the prior dating relationship ended "recently" relative to the assault is unworkable. The statute provides no guidance as to what constitutes recently. Reasonable people could conclude that a period of three years between the end of the dating relationship and the assault, as in Appellant's case, is recent, while a period of ten or fifteen years is not. On the other hand, Chief Justice Wright claims that a three-year period "does not fit within the concept of 'recently.'" *Sanchez*, 460 S.W.3d at 683. If the legislature had intended for there to be an explicit limit on the length of time between the dating relationship and the assault, it would have inserted one into the statute. We will not add a statutory time limit when none exists in Texas Family Code § 71.0021.

**CONCLUSION**

For all the foregoing reasons, we conclude that a defendant may be convicted of assaulting his spouse based solely on their past dating relationship.  We affirm the decision of the court of appeals.

Meyers, J.

Delivered: September 14, 2016

Publish