**Opinion issued February 13, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

NOS. 01-19-00151-CR
01-19-00153-CR

———————————

**JEREMY L. JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1551898 & 1551899**

---

## MEMORANDUM OPINION

A jury convicted appellant, Jeremy L. Jones, of aggravated assault of a

person with whom he has or has had a dating relationship[1] and aggravated assault,[2]

---

[1]  Trial court number 1551898, appellate court number 01-19-00151-CR.  The complainant in this case is Angela Garcia.

and the trial court assessed punishment at 38 years' confinement and 20 years' confinement, respectively. In two issues, appellant contends that the trial court erred by: (1) admitting evidence in both cases of a telephone call appellant made from jail over his Texas Rule of Evidence 403 objection and (2) refusing to charge the jury on the lesser-included offense of aggravated assault in the aggravated-assault-of-a-family-member case. We affirm.

## BACKGROUND

Appellant and Angela Garcia dated for some time, and, even after they broke up, they maintained a casual, sexual relationship. However, when Angela began dating Damarcus Jones, she attempted to sever ties with appellant completely, and he began threatening her. In April 2017, Angela spoke with police about appellant's threats, but she heard nothing further from the police about the matter.

In the early morning hours of May 14, 2017, appellant broke through the backdoor of Angela's apartment and shot her and Damarcus while they lay in bed. Both Angela and Damarcus suffered serious injuries, and both identified appellant as the shooter. Appellant was charged with aggravated assault of a person with

---

[2] Trial court number 1551899, appellate court number 01-19-00153-CR. The complainant in this case is Damarcus Jones.

whom he has had a dating relationship for shooting Angela[3] and aggravated assault for shooting Damarcus.[4]

## RULE 403 OBJECTION

In his first issue, appellant contends that the trial court erred by permitting the State to introduce evidence of a jailhouse telephone call from appellant to a friend over appellant's objection under Texas Rule of Evidence 403.

### *Background*

At trial, Daniel Miller, who was appellant's friend and Angela's brother, testified about a telephone call that he received from appellant while appellant was in jail.[5] Daniel identified the State's recording of the call, Exhibit 13, as a true and correct recording of a conversation between appellant and him. On the tape, there is some discussion between Daniel and appellant about whether "she" will be at an upcoming court appearance, after which appellant says, "I'm definitely not f–-king with her no more." Daniel says, "You've learned your lesson," and appellant responds, "Yeah, I definitely won't do that no more." Before the tape was admitted, appellant's counsel objected that the tape was "more prejudicial than probative" and should be excluded pursuant to Texas Rule of Evidence 403. The

---

[3]     *See* TEX. PENAL CODE § 22.02 (a), (b).

[4]     *See* TEX. PENAL CODE § 22.02 (a).

[5]     The telephone call was edited such that it did not reveal to the jury that it was made from the jail.

3

trial court overruled appellant's objection, and admitted the tape of the telephone call.

### *Standard of Review and Applicable Law*

We review a trial court's ruling to admit or exclude evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court abuses its discretion when its ruling falls outsize the zone of reasonable disagreement. *Id.*

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.* (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). "'Unfair prejudice' refers to a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* "It is only when there exists a clear disparity between the degree of

prejudice of the offered evidence and its probative value that Rule 403 is applicable." *Id.* (quoting *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997)).

In conducting a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)    A trial court is entitled to broad discretion in ruling on a Rule 403 objection.  *State v. Mechler*, 153 S.W.3d 435, 438 (Tex. Crim. App. 2005).

*Analysis*

Appellant argues that "[t]he problem with the conversation in State's Exhibit No. 13 is that it is not clear what the men are talking about" and that "before evidence of that nature is admitted the actual meaning of the statements has to be crystal clear."  Appellant further contends that "[t]he phone call in question simply

had no probative value because it required the jury to speculate as to the appellant's meaning."

We disagree with appellant's premise that, just because the telephone call might create conflicting inferences (i.e., it is either a confession or appellant is talking about something else entirely), it lacks probative value.[6] It is within the province of the jury to resolve any ambiguity or doubt as to the meaning of appellant's statements. *See Hernandez v. State*, 470 S.W.3d 862, 869 (Tex. App.—Fort Worth 2015, pet. ref'd). Further, "[w]e presume the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

Because the jury resolved any conflicting inferences in favor of the verdict, we assume that they found appellant's statements to be "tantamount to a confession," as appellant asserts in his brief. The issue, thus, is whether the admission of statements tantamount to a confession are unduly prejudicial in violation of Rule 403.

Here, the probative value of appellant's statements[7] is high because it serves to make a fact of consequence—whether appellant shot Angela—more or less

---

[6]     We also note that appellant does not make a Rule 401 relevancy argument on appeal.

[7]     His statements include inculpatory comments that he had "learned his lesson," "I won't do that no more," and he was "[d]efinitely not f---ing with her no more."

probable. *See Mechler*, 153 S.W.3d at 440. And, while appellant's statements are undoubtedly prejudicial, they are not unfairly prejudicial because they relate directly to one of the charged offenses and do not have a great potential to impress the jury in an irrational way. *See id.* Arguably, however, the State did not have a great need to introduce the telephone call with appellant's inculpatory statements in light of the two eyewitness identifications of appellant by the complainants. *See id.* at 441. But, because of the strength of the State's identification evidence, it is unlikely that the jury gave undue weight to appellant's statements in the telephone call or that it was unequipped to evaluate the probative force of the evidence. *See Gigliobianco*, 210 S.W.3d at 641. No undue amount of time was needed to develop the evidence. The telephone conversation had been edited and the jury heard only a one minute and 41 second excerpt from it. *Id.* at 641–42.

Thus, the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of appellant's statements in the telephone call was not substantially outweighed by the countervailing factors specified in the rule. *See id.*

We overrule issue one.

**LESSER-INCLUDED OFFENSE**

In his second issue on appeal, appellant contends that "it was reversible error for the trial court to refuse to instruct the jury on the lesser offense of aggravated assault."[8]

*Background*

During her testimony, Angela explained that she and appellant had dated for a year, but, after they broke up, they continued to have a sexual relationship, which she agreed could be described as being "sex buddies." Appellant contends that, considering this testimony, the jury should not have been charged only on the offense of aggravated assault involving a dating relationship; it should also have been charged on the lesser-included offense of aggravated assault.

*Standard of Review and Applicable Law*

When reviewing alleged charge error, we first determine whether error exists and then, if so, ascertain whether the resulting harm is sufficient to warrant a reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). We follow a two-step test in determining whether a trial court is required to give a requested instruction on a lesser-included offense. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). The first step is to determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged

---

[8] This issue relates only to the appeal in which Angela is the complainant.

offense, which is a matter of law. *Id.* Under this step, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). The second step is to ask whether there is evidence in the record that supports giving the instruction to the jury. *Id.* Under this step, a defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011). The evidence must establish the lesser-included offense as a valid, rational alternative to the charge offense. *Id.*

*Analysis*

The parties agree that, in this case, aggravated assault is a lesser-included offense of aggravated assault of a person with whom appellant has or has had a dating relationship, with the only additional element requiring the State to prove a dating relationship between appellant and Angela. Thus, we turn to the second prong of the test for a lesser-included offense, i.e., whether there is some evidence in the record that would permit a jury to rationally find that, if the appellant is guilty, he is guilty only of aggravated assault. In other words, is there more than a scintilla of evidence that appellant and Angela *did not* have a dating relationship? We hold that there was not.

A "dating relationship" is statutorily defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE § 71.0021(b). The existence of such a relationship shall be determined based on consideration of (1) the length of the relationship, (2) the nature of the relationship, and (3) the frequency and type of interaction between the persons involved in the relationship. *Id.* A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a "dating relationship." *Id.* § 71.0021(c). Applying these factors, the court of criminal appeals has held that evidence of a "dating relationship" was sufficient when the record showed that the defendant and the victim each "occasionally . . . spent the night with the other at the other's residence" from January 2005 through February 8, 2005. *Villarreal v. State*, 286 S.W.3d 321, 324 (Tex. Crim. App. 2009).

Appellant contends that there is evidence that he and Angela did not have a dating relationship, and he points to her testimony, in which she stated, "Well, I wouldn't call it a relationship. We would just hang out, have intercourse, and go on about our days." Angela agreed with defense counsel's characterization of her relationship with appellant as just "sex buddies." Essentially, appellant argues that because his relationship with Angela had devolved from dating to a purely sexual

10

relationship with no commitment, he and Angela did not "have or have had" a dating relationship. We disagree.

It is undisputed that Angela and appellant dated for some period of time. Angela's father, Larry Garcia, testified that "[t]hey were in a relationship for a few good years." He also said that "[t]he had been dating for about five or six years," before Angela left appellant. Garcia testified that he was aware that his daughter, Angela, had dated appellant for four to five years. Garcia stated, "Their relationship, as far as I seen, they were boyfriend and girlfriend the whole time I seen them." Appellant told Garcia that he loved Angela.

Angela's current boyfriend and the other complainant in this case, Damarcus Jones, testified that he was aware of the on-again-off-again relationship between Angela and appellant. He stated, "I had known that they had a relationship before me and her started talking, but once me and her started talking, she wasn't talking to him."

Angela's brother, Daniel Miller, testified that he was aware of the dating relationship between his sister and appellant. He testified that they officially became boyfriend-girlfriend "maybe like a week or two" after he introduced them. Miller testified, "They've been together for like—I want to say five years before all this stuff happened, or four years, somewhere around there." He also noted that Angela and appellant lived together as a couple for approximately six to eight

11

months.  Miller testified that even when they did not live together, they saw each other "constantly; every day for years."

Angela, however, testified that she only dated appellant for one year, but "[they] had broken up, went [their] own way;" and after that "[they] were just like on and off." Angela testified, "We'd see each other, we'll have intercourse, and just go off and do our own things." She testified that this strictly sexual relationship continued for "a couple of years," during which they would have sex "every other week or so."

As seen from the testimony above, even if we were to disregard the time that Angela claimed that she and appellant were just "sex buddies," there is evidence that Angela and appellant were in a dating relationship for, at most, four to five years, or at least, one year.  While dating, they had a sexual relationship, lived together for six to eight months, and saw each other "constantly."  This was not a casual acquaintanceship or ordinary fraternization, and there is no controverting evidence to suggest that it was. The fact that the dating relationship ended sometime before the shooting is irrelevant because the statute requires only that they "have or *have had* a continuing relationship of a romantic or intimate nature." *See Hill v. State*, No. 01-10-00926-CR, 2012 WL 983338 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op.) (interpreting TEX. FAM. CODE § 71.021(b) and holding that jury permitted to find that "a dating relationship existed

12

if it found that [the defendant] and [the complainant] had a continuing relationship of a romantic or intimate nature in the past, regardless of whether that relationship was ongoing at the time of the assault"); *see also Sanchez v. State*, 499 S.W.3d 438, 443 (Tex. Crim. App. 2016) ("If the legislature had intended for there to be an explicit limit on the length of time between the dating relationship and the assault, it would have inserted one into the statute").

Because there is no evidence that appellant and Angela *never* had a dating relationship, the trial court did not err by refusing to charge the jury on the lesser-included offense of aggravated assault in the case in which Angela is the complainant.

We overrule issue two. In light of our disposition of this issue, we need not also decide whether an ongoing, but purely sexual relationship is a "continuing relationship of a romantic or intimate nature," as required by section 71.021(b) of the Family Code, and we decline to do so.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Kelly and Goodman.

Do not publish. TEX. R. APP. P. 47.2(b).

13