

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-18-00707-CR

Burdane Maurice **GRANGER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B17780
Honorable Rex Emerson, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: July 24, 2019

AFFIRMED

On June 5, 2018, a Bexar County jury found Appellant Burdane Maurice Granger guilty of felony assault—family violence, enhanced by prior felonies as a habitual offender. The trial court subsequently assessed punishment at forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Granger contends (1) the trial court erred in failing to include the definition of "dating relationship" in the court's charge and (2) the evidence is legally insufficient to support the jury's finding of a dating relationship between Granger and the victim, Carrie Guerrero.

Because we conclude the evidence is legally sufficient to support the jury's finding that a dating relationship existed between Granger and Guerrero, and Granger failed to show egregious harm, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2017, after several witnesses saw Granger pull his ex-girlfriend, Carrie Guerrero, by the hair and place her in a headlock, Granger was arrested for assault. The events were recorded on a security system owned by Francis Galvan Jr., a neighbor across the street. Granger fled the scene after a second neighbor, Phillip Lowry, drew a knife and demanded Granger release Guerrero. Kerrville Police Officer Ed Holloway located and arrested Granger shortly thereafter.

On November 13, 2017, Granger was indicted on felony assault—family violence, enhanced with a prior family violence assault conviction. Granger's indictment also included two prior felony convictions for sentencing enhancement purposes.

On July 5, 2018, a Kerrville County jury found Granger guilty of felony assault—family violence. The trial court subsequently sentenced Granger to forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal ensued.

On appeal, Granger contends (1) the trial court erred in failing to include the definition of "dating relationship" in the court's charge and (2) the evidence is legally insufficient to support the jury's finding of a dating relationship between Granger and Guerrero.

## DATING RELATIONSHIP

We first address whether the evidence is legally sufficient to support a dating relationship between Granger and Guerrero.

**A.      Sufficiency of the Evidence**

*1.      Standard of Review*

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *accord Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence . . . ." *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability "to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id*. (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *See Hooper*, 214 S.W.3d at 13; *King*, 29 S.W.3d at 562. The jury alone decides whether to believe eyewitness testimony, and it is solely responsible for resolving any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 15; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

An appellate court "measures whether the evidence presented at trial was sufficient to support a conviction by comparing the evidence to 'the elements of the offense as defined by the hypothetically correct jury charge for the case.'" *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

> A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."

*Id*. (quoting *Malik*, 953 S.W.2d at 240).

### 2. Arguments of the Parties

Granger contends conclusory statements are the only evidence of an alleged dating relationship between himself and Guerrero. Granger argues the record contains no evidence concerning the nature of their relationship, the length of their relationship, or the frequency and type of interactions between the parties.

The State counters that several witnesses testified regarding Granger and Guerrero's relationship. Notably, Guerrero's testimony that she and Granger "had had" a dating relationship was uncontested. The jury could have reasonably relied on any or all of the witnesses to support its finding that Granger and Guerrero were in a dating relationship.

### 3. Dating Relationship

Based on the hypothetically correct jury charge, the State was required to prove the following:

> [O]n or about AUGUST 1, 2017, in Kerr County, Texas, [Granger] did intentionally, knowingly or recklessly cause bodily injury to Carrie Guerrero, a person with whom [Granger] had or had had a dating relationship, as described in Section 71.0021B Family Code, by pulling her hair and putting her in a head-lock.

*See* TEX. PENAL CODE ANN. § 22.01.

4.    *Evidence Presented at Trial*

    a.    <u>Francisco Galvan Jr.</u>

Francisco Galvan works for the Kerrville Police Department as a public safety communication manager. Galvan lives near Guerrero's mother, the home where the incident occurred. His residence is equipped with an exterior security recording system that recorded the events of August 1, 2017. The security camera recorded Guerrero running across the street, with Granger pulling her hair and trapping her in a head-lock. The video shows Guerrero's head "bob back" when Granger grabbed her hair, indicating Guerrero was struck. The footage also captured Philip Lowry approach Granger with a knife and presumably demand Granger release Guerrero. The video was admitted at trial without objection.

When questioned regarding the nature of Guerrero and Granger's relationship, Galvan testified Granger was at the residence "all the time . . . [Guerrero] lived there and [Granger] was there all the time. I don't know the status."

    b.    <u>Phillip Lowry</u>

Phillip Lowry, another of Guerrero and her mother's neighbors, was working on his property when he heard yelling across the street. He ran across the street and saw Granger, a large man, "dragging Guerrero by her head." Lowry pulled out his knife and demanded Granger release Guerrero. Granger ran back into the house before the police arrived. Lowry testified he knew both Guerrero and Granger as acquaintances.

When asked whether he knew if Granger and Guerrero were in a dating relationship, Lowry responded, "as far as I could tell, they were, yes."

### c. Kerrville Police Officer Ed Holloway

Kerrville Patrol Officer Ed Holloway, the first officer to respond, removed Granger from the residence at gunpoint. Granger reported he was upset by a transaction between another man and "his girlfriend." Officer Holloway also testified Granger identified Guerrero as his girlfriend.

### d. Carrie Guerrero

On August 1, 2017, Granger burst, uninvited, into the home where Guerrero lived with her mother. Granger saw Guerrero sitting in the living room with another man. Fearing Granger's anger, Guerrero fled the house hoping for witnesses and possible assistance.

> I didn't want to be inside the home if there was any kind of confrontation, so I didn't feel intimidated . . . there would be other people outside that could possibly help the situation.

Granger followed Guerrero, grabbed her by the hair, pulled her toward the street, and placed her in a headlock. When she fell to the ground, Granger picked her up off the ground by her hair; Guerrero begged Granger to let her go. Guerrero testified that when Lowry approached with a knife, Granger finally released her.

Guerrero further testified that she and Granger were in an "on and off" dating relationship and they had previously lived together.

### 4. Analysis

The crux of Granger's sufficiency challenge hinges on whether the State sufficiently established a dating relationship between Granger and Guerrero. "A dating relationship is a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *Sanchez v. State*, 499 S.W.3d 438, 441 (Tex. Crim. App. 2016) (quoting TEX. FAM. CODE ANN. § 71.0021(b)) (citations omitted); *see Leach v. State*, No. 03-13-00784-CR, 2015 WL 8607060, at *2 (Tex. App.—Austin Dec. 9, 2015, no pet.). An appellate court considers three factors in determining the existence of a dating relationship: "(1) the length of the relationship; (2)

the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." *Herrera v. State*, 526 S.W.3d 800, 810 (Tex. Crim. App. 2017) (quoting TEX. FAM. CODE ANN. § 71.0021(b)). A "casual acquaintanceship" is not sufficient to support the necessary requirements. *See id*.

We find the Fourteenth Court of Appeals' analysis in *Hill v. State* instructive. No. 01-10-00926-CR, 2012 WL 983338, at *3 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication). In evaluating the length and nature of the appellant's and victim's relationship, the court considered, inter alia, the victim's reference to the appellant as her "boyfriend" and "ex-boyfriend," the victim reporting to the officer that she and appellant "had previously been together 'relationally,'" appellant admitting that he and the victim had previously lived together, and appellant's statement "that it had been 'probably about a month' since their break up." *Id*. The court concluded (1) the statute did not require the relationship to be ongoing at the time of the assault; and (2) the evidence was sufficient for a rational jury to find the existence of a dating relationship. *See id*. at *3–4; *see also Sanchez*, 499 S.W.3d at 442 (concluding "'has had' phrase allows the dating relationship to have ended prior to the assault"); *Villarreal v. State*, 286 S.W.3d 321, 324 (Tex. Crim. App. 2009).

The State presented several witnesses, including the victim, supporting the existence of a prior dating relationship between Granger and Guerrero. *See Villarreal*, 286 S.W.3d at 324 (concluding evidence sufficient to show dating relationship where defendant and complainant spent night at each other's residences and had dated only about one month). The evidence was undisputed. In fact, even Granger referred to Guerrero as "my girlfriend" when questioned by Officer Holloway. *Herrera*, 526 S.W.3d at 804 (considering defendant's statements to officer that he and victim had been dating for three weeks); *Hill v. State*, 2012 WL 983338, at *3.

The defense presented no contrary evidence to dispute the assertions made by the State's witnesses. Deferring to the jury's "responsibility to fairly resolve conflicts in testimony, to weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts," we conclude the evidence is legally sufficient to support the jury's findings that a dating relationship existed between Granger and Guerrero. *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (quoting *Hooper*, 214 S.W.3d at 13)).

Having found sufficient evidence to support the existence of a dating relationship, we turn to whether the trial court erred in failing to include a definition of "dating relationship" in the charge of the court.

**B.      Jury Charge Error**

*1.      Standard of Review*

Jury charge error is subject to a harmless-error analysis. *See Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011). The two-step analysis determines first, whether error exists; if so, whether sufficient harm flowed from the error to warrant reversal. *See id*. (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)); *see also Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). Whether the error was preserved in the trial court determines the degree of harm required for reversal on appeal. *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza*, 686 S.W.2d at 171). If error was preserved by objection at trial, reversal requires a showing of "some harm." *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). If, however, error was not preserved by objection at trial, reversal requires proof of fundamental harm "so egregious that the defendant was deprived of a fair and impartial trial." *Villarreal*, 453 S.W.3d at 433.

*2.    Arguments of the Parties*

The State concedes the trial court erred in failing to include the definition of "dating relationship," but argues Granger failed to show egregious harm. To the contrary, the State contends Granger and Guerrero's relationship was undisputed by the evidence presented at trial.

Granger contends the trial court's inclusion of definitions such as "spouse," "family," "family violence," and "household," but not "dating relationship," was confusing to the jury. Granger further argues the trial court's omission caused him to suffer egregious harm. The State, however, contends defense counsel's failure to object to the trial court's omitting the definition of "dating relationship" was not an accident but trial strategy. During the State's closing argument, defense counsel objected when the prosecutor told the jury that "prov[ing] [Guerrero] is a family member of a household" is sufficient to prove a dating relationship.

We, therefore, presume error and turn to whether Granger was egregiously harmed by the trial court's failure to include the statutory definition of "dating relationship." *See Villarreal*, 453 S.W.3d 433; *Almanza*, 686 S.W.2d at 171.

*3.    Egregious Harm Analysis*

Egregious harm affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *See Villarreal*, 453 S.W.3d 433; *Almanza*, 686 S.W.2d at 171. It is a high standard and requires review of the entire trial record. *See Villarreal*, 453 S.W.3d 433; *Almanza*, 686 S.W.2d at 171. The appellant must suffer "actual rather than theoretical harm" to warrant reversal. *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). An appellate court considers (1) the entirety of the jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole to determine whether egregious harm has resulted. *See Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

Here, although the court's charge did not define "dating relationship," the application paragraph specifically required the jury to find that Granger and Guerrero "had or had had a dating relationship," as defined by the offense and the applicable elements. "Our courts have held that when a statutory definition is not included in the jury charge, 'it is assumed the jury would consider the commonly understood meaning in its deliberations.'" *Lovings v. State*, 376 S.W.3d 328, 338 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (quoting *Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983)).

"Dating Relationship" is statutorily defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *See* TEX. FAM. CODE ANN. § 71.0021(b). In *Leach v. State*, the Austin Court of Appeals explained, "the combined dictionary meanings of the terms 'date' and 'relationship' reflect a commonly understood meaning of the phrase 'dating relationship' that closely resembles the [Texas Family Code section 71.0021(b)] statutory definition of 'dating relationship.'" No. 03-13-00784-CR, 2015 WL 8607060, at *5 (Tex. App.—Austin Dec. 9, 2015, no pet.) (mem. op., not designated for publication).

Here, the jury heard four witnesses testify that Granger and Guerrero were in a dating relationship. Galvan and Lowry both witnessed Granger at the residence. Guerrero testified she "had had" a dating relationship with Granger; and Granger even referred to Guerrero as his girlfriend. The defense offered no contrary evidence.

Questions raised by both the State and defense counsel and arguments made throughout trial indicate that establishing a dating relationship was essential to convicting Granger of the charged offense. During opening statements, the State opined, "Mr. Granger had previously been in a dating relationship with Carrie Guerrero. They had maybe even lived together on and off a little bit and had a dating relationship." Defense counsel further reminded the jury that Granger

and Guerrero dated in the past. Like *Moreno v. State*, when the definition of "dating relationship" was erroneously omitted from the charge, "[t]here is nothing in [this] record to indicate that the jury was misled or left ignorant of how the term 'dating relationship' was to be applied in evaluating the evidence." No. 04-17-00442-CR, 2018 WL 3129451, at *3 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op., not designated for publication).

We conclude the jury could reasonably determine, based on the common meaning of "dating relationship," that Granger and Guerrero were in a dating relationship as defined by Texas Family Code section 71.0021(b). *See Hooper*, 214 S.W.3d at 15–16 (explaining inference is "a conclusion reached by considering other facts and deducing a logical consequence from them"); TEX. FAM. CODE ANN. § 71.0021(b); *see also Leach*, 2015 WL 8607060, at *5. We further conclude the jury could reasonably determine that based on (1) Granger previously staying at Guerrero's mother's house and referring to Guerrero as his girlfriend, (2) Guerrero testifying they had previously been dating, and (3) both neighbors thinking Granger and Guerrero were in a dating relationship, the jury could reasonably infer the dating relationship about which the State and defense counsel were referring was "a continuing relationship of a romantic or intimate nature." *See Leach*, 2015 WL 8607060, at *5 ("[N]othing in the record indicates the jury's verdict was based on facts that would not constitute a "dating relationship" under the statutory definition of section 71.0021(b)."); *see also* TEX. FAM. CODE ANN. § 71.0021(b).

Based on a review of the entire jury charge, the weight of the evidence, the arguments of counsel made during opening arguments and throughout trial, the statements of both Granger and Guerrero, and the common meaning of "dating relationship," we conclude the record does not support a showing of egregious harm.

## CONCLUSION

Having found the evidence sufficient to support the jury's finding that Granger and Guerrero "had had" a dating relationship and that Granger did not suffer egregious harm by the trial court's failure to include the statutory definition of "dating relationship" in the charge of the court, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH